MeRAE, Justice,
for the Court:
William Joseph Holly was convicted of capital murder, kidnapping and grand larceny by a jury of the Grenada County Circuit Court on March 3,1993 for the July 12,1992 slaying of David Norwood, Jr., a Grenada cab driver. After his motion for a new trial was denied, the record in Holly’s appeal to this Court was filed on August 12, 1993, with an additional supplement being filed in December of 1994. Holly’s brief was filed with this Court on January 26, 1995, and the State’s brief, six months later, on July 31,1995. The briefs and record were validated by the Clerk on August 21, 1995 for this Court’s consideration. Having considered carefully the record before us as well as the arguments presented on Holly’s behalf, we affirm the jury’s verdict and sentence on the kidnapping and capital murder charges. However, since Holly was convicted of capital murder with armed robbery as an underlying offense, we find that conviction on the grand larceny charge, under the circumstances of this case, constitutes double jeopardy which prohibits multiple punishments for the same offense. Therefore, we reverse and vacate Holly’s conviction for grand larceny.
FACTS
On July 12, 1992, seventeen-year-old William Holly, along with Tommy G. Benefield and Waylon Kendall, were involved in efforts to assist Holly in his professed plan to move from Grenada County to Chicago, Illinois. Holly prevailed upon Benefield to call Neely’s Cab Company in Grenada to summon a cab to the local train station. At some point later, taxi driver David Norwood appeared. Holly and his friends, armed with guns supplied by Holly, entered the taxi, and according to the undisputed evidence, Holly ordered Norwood at gunpoint to drive to a secluded area. Norwood was ordered out of the car and into the woods.
Holly admitted robbing Norwood of cash and his car. On cross-examination, he also admitted to stealing money orders, but on redirect, stated that he had not done so. He further stated that he did not obtain the money orders from the person of David Nor-wood, but that they were on the dashboard of the cab and already had the names of the recipients on them, i.e. “South Central Bell” and “Fash-Way.” Kendall, however, testified that Holly ordered Norwood to put his wallet on top of the car and further, that Holly extracted Norwood’s license from the wallet, as well as cash and money orders that had been in his pocket and in the cab.
After Holly pocketed the wallet, cash and money orders from the top of the cab, he directed Norwood to march into the woods, ostensibly for the purpose of disorienting him. Kendall testified that Holly told Nor-wood to walk ahead of them, and when he said “go,” to start running. According to Kendall, once Norwood had taken about two steps, Holly pulled the shotgun trigger and shot him.
Norwood was shot at close range in the back and in the left temple. Although Holly admitted shooting Norwood and Kendall testified that he saw him pull the trigger, Holly initially claimed that the shotgun first dis *35 charged accidentally when he tripped over a tree root. He then testified that after he fired the first shot, he shot Norwood again, because “[l]ike I said, I panicked, and plus I didn’t want to see the man suffer.” Holly shouted, “Adiós, amigo,” after shooting him the second time. On cross-examination, however, Holly further stated that he had told authorities in Illinois that he had blown out his victim’s heart and lungs, knowing exactly what he had hit.
Benefield testified that Holly ordered them back into the cab upon returning from the woods. They left the scene of the crime in Norwood’s cab. Traveling down Highway 7 toward Coffeeville, Mississippi, the cab broke down. The trio hitched a ride to Coffeeville, and at one point were stopped by police who questioned the driver about Norwood. Once in Coffeeville, about five or six hours after the shooting, Kendall parted ways with Holly and Benefield, ran to his uncle’s house and called police to report the murder. Holly and Benefield then stole a Yalobusha County, Mississippi school bus and drove to Illinois. Their journey ended with a gun battle in a Decatur, Illinois parking lot, after the two attempted to abduct a woman and her van.
On July 31, 1992, Holly was indicted for capital murder, kidnapping, and grand larceny. He was tried by a jury in the Circuit Court of Grenada County on March 2 and 3, 1993, and found guilty on all three charges. The jury specifically found that Holly murdered David Norwood, Jr. with a shotgun while in the commission of armed robbery in violation of Miss.Code Ann. § 97-3-19(2)(e)(1994). The jury subsequently sentenced Holly to death based on the following two aggravating circumstances which existed at the time of the murder: the capital murder of James David Norwood, Jr. was committed while the defendant was engaged, or was an accomplice, in the commission of an armed robbery, and Holly was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person. Judgment sentencing Holly to death was entered on March 3, 1993. Holly’s motion for a new trial was denied on March 9,1993. Holly raises sixteen issues to this Court on appeal. We find that all but one of these issues are either proeedurally barred or without merit.
DISCUSSION OF THE LAW
I. WHETHER THE PROSECUTION IMPROPERLY COMMENTED ON THE DEFENDANT’S FAILURE TO TESTIFY IN THE SENTENCING PHASE
“In all criminal prosecutions the accused shall ... not be compelled to give evidence against himself.” Mississippi Constitution of 1890, art. Ill, § 26. The United States Constitution grants the same right when it states that “No person ... shall be compelled in any criminal case to be a witness against himself.” U.S. Const, amend. V. This right is violated by a direct statement regarding the defendant’s decision not to testify, or a comment which could reasonably be construed by a jury to be a comment about the defendant’s failure to testify. Griffin v. State, 557 So.2d 542, 552 (Miss.1990); Jimpson v. State, 532 So.2d 985, 991 (Miss.1988); Livingston v. State, 525 So.2d 1300, 1305-08 (Miss.1988).
Holly testified in the guilt phase of the trial; however, he did not take the witness stand in the sentencing phase. The testimony dining the guilt phase was stipulated by both counsels to be used in the sentencing phase. During closing argument at the sentencing phase, the prosecution made several comments regarding Holly’s testimony, demeanor, and lack of remorse at trial. No contemporaneous objection was made; however, after the jury began deliberations, Holly moved for a mistrial on the basis that the prosecution commented directly on his failure to testify at trial. His motion was subsequently denied. On appeal, Holly argues that the prosecution improperly commented on his failure to testify in violation of the Fifth and Fourteenth Amendments to the United States Constitution, as well as art. Ill, § 26 of the Mississippi Constitution.
The State maintains that Holly is procedurally barred from raising this claim on appeal since he failed to move for a mistrial during the closing argument, waiting instead until the jury retired for deliberations. A contemporaneous objection to improper ar *36 gument during trial is required to preserve the issue for appeal. Foster v. State, 639 So.2d 1263, 1290 (Miss.1994) (plurality); see also Whigham v. State, 611 So.2d 988, 995 (Miss.1992) (procedural bar applies unless error involves serious violation of constitutional right). We find that the defense failed to contemporaneously object and is therefore procedurally barred.
Alternatively, this assignment of error is without merit. Although Holly chose not to testify during the sentencing portion of the trial, the record shows that he testified during the guilt phase of the trial. All of the testimony introduced by the defense, including that of the defendant, was then carried over to the sentencing phase pursuant to motions from both sides who stipulated to its use. See Hill v. State, 432 So.2d 427, 441 (Miss.1983) (there is no error in permitting jury to consider during sentencing phase all previous evidence introduced at guilt phase).
“The prosecution is always free to discuss at length the testimony of the State’s witnesses and why they are credible.” Whigham, 611 So.2d at 995. Nor is a prosecuting attorney prevented from commenting on the appearance of the defendant as it existed during his testimony. Reed v. State, 197 So.2d 811, 815 (Miss.1967); see also Knox v. State, 502 So.2d 672, 675 (Miss.1987) (prosecution may comment on demeanor of defendant who personally subjects victim to extensive cross-examination).
It is apparent that each of the comments made by the prosecution were either arguments related to the credibility of the defendant’s testimony and his demeanor, or in rebuttal to the arguments made by defense counsel during the sentencing phase. Holly placed his credibility before the jury by testifying during the guilt phase of the trial, and then stipulated to its use in the sentencing phase. See generally Jordan v. State, 464 So.2d 475, 482 (Miss.1985) (once defendant testifies to merits, prosecution is free to comment upon defendant’s failure to explain the facts in evidence). The comments made by the prosecution, when read in context of Holly’s testimony at trial, concerned his credibility and demeanor. While we hold that this error is procedurally barred, we also find it to be without merit.
II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE STATE TO PRESENT THE UNDERLYING FACTS OF A PRIOR FELONY CONVICTION WHERE SUCH EVIDENCE WAS IRRELEVANT AND WITHOUT PROBATIVE VALUE
On September 9,1992, Holly was convicted in the State of Illinois of attempted aggravated kidnapping and attempted aggravated murder in conjunction with the July 15, 1992 incident wherein he and his friend, Benefield, attempted to abduct a woman at gunpoint in a K-Mart parking lot. The episode culminated in a gun battle with Illinois police. At the sentencing phase of the trial, the State introduced a certified judgment of the conviction. Officer Michael Beck, an investigator for the Decatur, Illinois Police Department, very briefly recited the facts behind the charges: that two white males had hidden in a van belonging to a local woman; she ran when she realized they were there; they, in turn, ran to their parked Yalobusha County, Mississippi school bus, and opened fire on officers as they approached the vehicle.
Holly filed a motion in limine to exclude this evidence from the jury. The trial judge stated that he would reserve his ruling, but noted that the evidence probably would not be allowed during the guilt phase of the trial. The record does not indicate whether the court ruled on the motion. Holly also failed to obtain a ruling on his “Motion to Bar Introduction of Any Evidence Relating to Prior Convictions or Bad Acts” filed January 13,1992. The burden was on Holly to obtain a ruling on his motions. Billiot v. State, 454 So.2d 445, 456 (Miss.1984), cert. denied, 469 U.S. 1230, 105 S.Ct. 1232, 84 L.Ed.2d 369, reh. denied, 470 U.S. 1089, 105 S.Ct. 1858, 85 L.Ed.2d 154 (1985). Holly failed to meet this obligation.
Holly’s only objection to Officer Beck’s testimony in the sentencing phase of the trial was raised when the investigator testified as to what another officer had seen at the scene of the incident. That hearsay objection was *37 overruled. He is further barred procedurally by his failure to make a contemporaneous objection to Officer Beck’s testimony. Carr v. State, 655 So.2d 824, 852 (Miss.1995); Conner v. State, 632 So.2d 1239, 1255 (Miss.1993); Russell v. State, 607 So.2d 1107, 1117 (Miss.1992); Fleming v. State, 604 So.2d 280, 292 (Miss.1992); Cole v. State, 525 So.2d 365, 374 (Miss.1987); Lockett v. State, 517 So.2d 1346, 1353 (Miss.1987).
III. WHETHER THE TRIAL COURT ERRED IN ALLOWING A “FLIGHT INSTRUCTION” OYER OBJECTION OF COUNSEL
Holly next contends that the circuit court erred in allowing the State to give the jury a flight instruction. Instruction S-8 provides as follows:
Flight is a circumstance from which guilty knowledge can be inferred. If you believe from the evidence in this case beyond a reasonable doubt that the defendant, William Joseph Holly, did flee or go into hiding, such flight or hiding is to be considered in connection with all other evidence in this case. You will determine from all the facts, whether such flight or hiding was from a conscious sense of guilt or whether it was caused by other things and give it such weight as you think it is entitled to in determining the guilt or innocence of the defendant, William Joseph Holly.
“[A]n instruction that flight may be considered as a circumstance of guilt or guilty knowledge is appropriate only where that flight is unexplained and somehow probative of guilt or guilty knowledge.” Reynolds v. State, 658 So.2d 852, 856 (Miss.1995) (quoting Fuselier v. State, 468 So.2d 45, 57 (Miss.1985)). This Court has further explained that in determining whether a flight instruction is appropriate, two considerations are paramount:
(1) Only unexplained flight merits a flight instruction.
(2) Flight instructions are to be given only in cases where that circumstance has considerable probative value.
Banks v. State, 631 So.2d 748, 751 (Miss.1994) (quoting Pannell v. State, 455 So.2d 785, 788 (Miss.1984)). Holly contends that because his co-defendant corroborated his story that he had packed his bags for an allegedly planned trip to Chicago before abducting and shooting Norwood, his “flight” was neither unexplained nor probative of his guilt. See Mack v. State, 650 So.2d 1289, 1308 (Miss.1994) (flight evidence and instruction appropriate only where probative of guilt or guilty knowledge of crime charged and where there are no independent reasons for flight). He therefore likens his case to Banks. However, in Banks, as distinguished from the case sub judice, the defendant claimed to have acted in self-defense, and we determined that a flight instruction was prejudicial when self-defense was argued. Id. at 751.
The record indicates that Holly and his friends fled the scene in Norwood’s cab. When it broke down, Holly and Benefield stole a Yalobusha County school bus and drove to Chicago. Once there, they attempted to abduct a woman and steal her van which ultimately led to a shoot-out with police. Corroborative evidence that Holly “planned” to move to Chicago is based on what he told Benefield and Kendall. Further, it is probative of guilt because it suggests that Holly and Benefield were attempting to flee from their crime; in the alternative, it provides a motive for the robbery that set this case in motion. We therefore find no merit to this assignment of error.
IV. WHETHER WILLIAM HOLLY WAS DENIED A FUNDAMENTALLY FAIR TRIAL WHERE THE STATE WAS ALLOWED TO ELICIT HEARSAY TESTIMONY FROM ROBERT KENDALL WHICH BOLSTERED THE TESTIMONY OF ACCOMPLICE/STATE’S WITNESS WAY-LON KENDALL.
Holly contends that the trial court improperly allowed the prosecution to elicit inadmissible hearsay testimony from the witness Robert Kendall in order to bolster the testimony of Holly’s accomplice, Waylon Kendall. The following colloquy between *38 Robert Kendall and the prosecuting attorney transpired during trial:
A. He [Waylon Kendall] was running scared for his life.
Q. What did he tell you at that time?
BY MR. JONES: Objection to hearsay.
BY THE COURT: Objection is overruled.
A. He told me that he was just escaped from Bill Holly, that had him in his— he was — had him — hostage, or something or other. I don’t know the exact word for it.
Q. All right. What else did he tell you?
A. And, said that they had just killed a taxi-cab driver.
BY THE COURT: Let me see counsel up here for a moment.
(REPORTER’S NOTE: Counsel approached the Bench and conferred with the Court out of the hearing of the Reporter and the jury, after which the following was placed into the record, in full hearing of jury:)
BY MR. JONES: Your honor, I ask that the same objection be continued.
BY THE COURT: Well. I’m getting ready to reverse an earlier ruling, and I will rule the last statement regarding statements made by his nephew are inadmissible, and instruct the jury to disregard that. If there is anyone who will not do that, they should indicate it to me. No one has raised their hand. All right, please continue.
Q. All right, Mr. Kendall, without saying what your nephew told you, once he told you whatever he told you, who did you carry him to? Where’d you carry him?
Although the testimony was hearsay, the trial judge wisely reversed his ruling. He followed the reversal of his ruling by admonishing the jury to disregard the improper testimony, and asking the jury members if they could disregard the testimony. All jurors indicated they would disregard the testimony. When the trial judge determines that the error does not reach the level of prejudice warranting a mistrial, the judge should admonish the jury to disregard the impropriety in order to cure its prejudicial effect. Perkins v. State, 600 So.2d 938, 941 (Miss.1992); Estes v. State, 533 So.2d 437, 439 (Miss.1988). “This Court has repeatedly and consistently held that such action is sufficient to remove any prejudice resulting from the improper testimony.” Baine v. State, 604 So.2d 249, 256 (Miss.1992). The trial judge is permitted considerable discretion in determining whether a mistrial is warranted since the judge is best positioned for measuring the prejudicial effect. Roundtree v. State, 568 So.2d 1173, 1178 (Miss.1990).
Before beginning its deliberations, the jury was additionally instructed as follows:
INSTRUCTION NO. C-l
The production of evidence in court is governed by rules of law. From time to time during the trial, it has been my duty as judge to rule on the admissibility of evidence. You must not concern yourself with the reasons for the court’s rulings since they are controlled and governed by rules of law. You should not infer from any rulings by the court on these motions or objections to the evidence that the court has any opinion on the merits favoring one side or another. You should not speculate as to possible answers to questions which the court did not require to be answered. Further, you should not draw any inference from the content of those questions. You are to disregard all evidence which was excluded by the court from consideration during the course of the trial.
Again, the trial judge made it clear that the hearsay testimony elicited from Robert Kendall was not to be considered by the jury. The jury is presumed to have followed the court’s instructions. Marshall v. Lonberger, 459 U.S. 422, 438 n. 6,103 S.Ct. 843, 853 n. 6, 74 L.Ed.2d 646 (1983).
Holly argues that the damage had been done and reversible error already committed despite the trial court’s reversal of its ruling and subsequent instruction to the jury to *39 disregard excluded evidence. We find this argument to be without merit.
The hearsay testimony introduced in the case at bar does not appear to rise to the level of prejudice suggested by Holly. In fact, testimony producing similar evidence was properly introduced later at trial through Holly’s “admissions” to Waylon Kendall. This Court finds that the overall prejudicial effect of the improper hearsay testimony was minimal and that any prejudicial effect was cured by the court’s admonitions to the jury. Accordingly, this issue is resolved in favor of the State.
The Appellant raises three additional issues which we discuss together since they are proeedurally barred.
Y. WHETHER JURY INSTRUCTION S-5 AT THE GUILT PHASE RELIEVED THE STATE OF THE BURDEN OF PROVING INTENT TO COMMIT THE UNDERLYING FELONY, THEREBY VIOLATING THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND STATE LAW.
VI. WHETHER THE LEGISLATIVE MANDATE AS TO WHAT FACTORS JUSTIFY IMPOSITION OF A DEATH SENTENCE WAS FLOUTED WHEN THE PROSECUTION RELIED ON ARBITRARY FACTORS TO ADVOCATE DEATH, VIOLATING WILLIAM HOLLY’S RIGHTS UNDER MISSISSIPPI LAW AND THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES.
VII. WHETHER THE SENTENCING INSTRUCTIONS AND PROSECUTION’S ARGUMENT VIOLATED THE EIGHTH AMENDMENT AND STATE LAW BY PREVENTING THE JURY FROM CONSIDERING RELEVANT MITIGATING CIRCUMSTANCES.
The defense is proeedurally barred from asserting any error on these issues for lack of contemporaneous objection at trial to the various instructions and comments complained of Carr v. State, 655 So.2d 824, 852 (Miss.1995); Conner v. State, 632 So.2d 1239, 1255 (Miss.1993); Russell v. State, 607 So.2d 1107, 1117 (Miss.1992); Fleming v. State, 604 So.2d 280, 292 (Miss.1992); Cole v. State, 525 So.2d 365, 374 (Miss.1987); Lockett v. State, 517 So.2d 1346, 1353 (Miss.1987).
VIII.WHETHER THE SUBMISSION OF THE “ROBBERY” AGGRAVATING CIRCUMSTANCE VIOLATED STATE LAW AND THE STATE AND FEDERAL CONSTITUTIONAL PROHIBITIONS AGAINST CRUEL AND UNUSUAL PUNISHMENT.
Instruction C-l allowed the jury to consider as an aggravating circumstance that “[t]he capital murder of David James Nor-wood, Jr. was committed while the defendant was engaged or was an accomplice, in the commission of armed robbery.” Apparently ignoring the United States Supreme Court’s decision in Lowenfield v. Phelps, 484 U.S. 231, 246, 108 S.Ct. 546, 555, 98 L.Ed.2d 568 (1988), as well as this Court’s application of that decision, Holly suggests on appeal that “submission of this aggravating circumstance does not narrow the class of death-eligible defendants in a rational manner, thus it violates the Eighth Amendment.”
The United States Supreme Court has held that as long as the class of defendants eligible for the death penalty is narrowed during the guilt or sentencing phase of the trial, “the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm.” Lowenfield, 484 U.S. 231 at 246, 108 S.Ct. at 555. In Ladner v. State, 584 So.2d 743 (Miss.1991), this Court, again rejecting the contention that aggravating factors could not be “stacked,” reiterated Low-enfield, stating:
The United States Supreme Court held that when constitutionally required narrowing of the class of persons eligible for the death penalty is accomplished by the legislative definition of capital offenses in the guilt phase (as is done in Louisiana and Mississippi), the jury’s further narrowing of the sentencing phase is not constitution *40 ally required. [Lowenfield, 484 U.S.] at 241-46, 108 S.Ct. at 552-55, 98 L.Ed.2d at 579-83.
Ladner, 584 So.2d at 763. Since this issue has been resolved by this Court, we find no merit to Holly’s argument.
IX. WHETHER THE EVIDENCE IN THIS CASE IS SUFFICIENT TO PROVE THAT WILLIAM HOLLY IS GUILTY OF CAPITAL MURDER.
There must be “evidence legally sufficient to support a conviction of both the murder and the underlying felony had either been charged alone.” Fisher v. State, 481 So.2d 203, 212 (Miss.1985). Upon reviewing the legal sufficiency of the evidence, all of the evidence consistent with the defendant’s guilt is accepted as true together with any reasonable inferences that may be drawn from the evidence. Heidel v. State, 587 So.2d 835, 838 (Miss.1991); Davis v. State, 530 So.2d 694, 703 (Miss.1988). This Court may reverse only where the evidence regarding the elements of the crime is such that reasonable and fair minded jurors could only find the accused not guilty. Wetz v. State, 503 So.2d 803,808 (Miss.1987).
If there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.
McFee v. State, 511 So.2d 130, 133-34 (Miss.1987). The jury must be left to resolve matters regarding the weight and credibility of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
The uncorroborated testimony of an accomplice is sufficient to sustain a conviction. Foster, 639 So.2d at 1284; Culberson v. State, 379 So.2d 499, 503 (Miss.1979); Rich v. State, 322 So.2d 468, 469 (Miss.1975). However, this general rule is inapplicable where the accomplice testimony is unreasonable, self-contradictory or substantially impeached. Flanagan v. State, 605 So.2d 753, 758 (Miss.1992). Holly contends that the evidence was insufficient to support a conviction for the underlying offense of armed robbery because the only evidence of robbery was provided by accomplice testimony which was uncorroborated and substantially impeached. He points particularly to the fact that Kendall testified on direct examination that the money orders were taken from Norwood’s person, but changed his story on cross-examination to admit that the money orders were taken from the taxi. However, we find that the evidence was sufficient to show the money was taken from Norwood.
Regardless of this discrepancy in Kendall’s testimony, the elements of robbery only required that the money orders were taken from Norwood’s presence. The jury was made aware of this fact through the following two instructions:

INSTRUCTION NO. S-l

For you to find that the defendant, WILLIAM JOSEPH HOLLY, was engaged in the crime of armed robbery, the State must prove from the evidence beyond a reasonable doubt that:
(1) WILLIAM JOSEPH HOLLY on or about the 12th day of July, 1992, in Grenada County, Mississippi, did willfully, unlawfully and feloniously take money and money orders the personal property of Neely Cab Company and/or David James Nor-wood, Jr., and,
(2) said taking was in the presence of, from the person of, and against the will of said David James Norwood, Jr., and was accomplished by violence to his person with a deadly weapon, and,
(3) at the time, William Joseph Holly, had the intent to permanently deprive David James Norwood, Jr., of the property, then same would constitute the crime of armed robbery.

INSTRUCTION NO. S-9

A thing is in the “presence” of a person, in respect to robbery, which is so within his reach, inspections, observation or control, that he could, if not overcome with violence or prevented by fear, retain his possession of it.
The evidence was at least sufficient to establish that the money and money orders were taken from Norwood’s presence. This *41 fact was never contradicted during the course of trial. Holly even admitted at trial that the money orders were taken from the cab. It was stipulated that the money orders were found in Holly’s possession upon his arrest in Decatur, Illinois. Even if Holly was not the individual who removed the money orders from the dash or wallet, the evidence was clearly sufficient to establish Holly as a principal. Finally, the jury was instructed to weigh the accomplice testimony with “great care and caution and suspicion.” Accordingly, this Court finds the evidence sufficient to convict Holly of capital murder during the commission of robbery.
X.WHETHER THE ADMISSION OF GRUESOME PHOTOGRAPHS OF THE DECEASED VIOLATED RULE 403 OF THE MISSISSIPPI RULES OF EVIDENCE AND THE STATE AND FEDERAL CONSTITUTIONS.
Holly asserts that the circuit court erred in allowing into evidence three 4" x 6" color photographs taken of Norwood. They were introduced during the testimony of Deputy Coroner Eddie Robinson, who indicated that the photographs accurately depicted the large gunshot wounds Norwood sustained to his back and temple. Holly contends that the State’s Exhibits Nos. 14, 17 and 18 were highly prejudicial and had no probative value, thus violating M.R.E. 403, art. Ill, § 28 of the Mississippi Constitution and the Eighth Amendment to the United States Constitution.
In Westbrook v. State, 658 So.2d 847, 849 (Miss.1995), this Court stated that photographs have evidentiary value where they aid in describing the circumstances of the killing and the corpus delicti, Williams v. State, 354 So.2d 266 (Miss.1978); describe the location of the body and cause of death, Ashley v. State, 423 So.2d 1311 (Miss.1982); or supplement or clarify witness testimony, Hughes v. State, 401 So.2d 1100 (Miss.1981).
The admissibility of photographs rests within the sound discretion of the trial court. Griffin v. State, 557 So.2d 542, 549 (Miss.1990); Mackbee v. State, 575 So.2d 16, 31 (Miss.1990); Boyd v. State, 523 So.2d 1037, 1039 (Miss.1988); Smith v. State, 419 So.2d 563, 567 (Miss.1982), cert. denied 460 U.S. 1047, 103 S.Ct. 1449, 75 L.Ed.2d 803 (1983). Furthermore, the decision of the trial judge will be upheld unless there has been an abuse of discretion. Reynolds, 658 So.2d at 859; Herring v. State, 374 So.2d 784, 789 (Miss.1979).
The “discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value.” Hart v. State, 637 So.2d 1329, 1335 (Miss.1994) (quoting Williams v. State, 544 So.2d 782, 785 (Miss.1987)). As was noted in Taylor v. State, 672 So.2d 1246 (Miss.1995), this Court has held photographs “to be so gruesome and inflammatory as to be prejudicial in only one circumstance, a close-up photograph of a partly decomposed, maggot-infested skull.” Taylor, 672 So.2d at 1270-71 (citing McNeal v. State, 551 So.2d 151 (Miss.1989)).
The pictures at issue, although certainly not pleasant to look at, are not comparable to those described in McNeal, the ease upon which Holly relies. Further they serve to clarify and supplement the coroner’s testimony and to describe the cause of Norwood’s death. Accordingly, the trial judge did not abuse his discretion in admitting the photographs.
XI. WHETHER THE DEATH SENTENCE IMPOSED ON WILLIAM HOLLY IS INVALID UNDER THE STATE AND FEDERAL CONSTITUTIONS AND MUST BE VACATED SINCE MISSISSIPPI LAW FAILS TO AUTHORIZE IMPOSITION OF THE DEATH PENALTY FOR CRIMES COMMITTED BY JUVENILES.
XII. WHETHER THE DEATH PENALTY FOR A JUVENILE WITHOUT ANY PARTICULARIZED PRETRIAL FINDINGS BEING MADE AS TO HIS MATURITY AND MORAL RESPONSIBILITY, VIOLATES THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE 3, § 28 OF THE MISSISSIPPI CONSTITUTION OF 1890.
Miss.Code Ann. § 43-21-151(1) grants the youth court jurisdiction over all *42 proceedings concerning a delinquent child except where the offense is punishable by life imprisonment or death. Juveniles do not fall within the jurisdiction of the youth court if they commit offenses punishable by death or life imprisonment. Johnson v. State, 512 So.2d 1246, 1250 (Miss.1987); Winters v. State, 473 So.2d 452 (Miss.1985); Carter v. State, 334 So.2d 376 (Miss.1976).
Holly complains that neither the capital murder statute, Miss.Code Ann. § 99-19-101, nor the juvenile transfer statute, Miss.Code Ann. § 43-21-151(1) set an age below which a person may not be executed, constituting a violation of the Eighth Amendment. Holly argues he may not be executed since he was seventeen at the time he committed the offense. Although Holly failed to raise this argument in the court below, we will relax the contemporaneous objection rule where required by the interests of justice. Foster, 639 So.2d at 1295; Williams v. State, 445 So.2d 798 (Miss.1984).
Mississippi law clearly prohibits the execution of a juvenile who committed an offense while under the age of thirteen since he may not even be charged for a misdemeanor or felony. Miss.Code Ann. § 43-21-151(3). Furthermore, the Eighth and Fourteenth Amendments prohibit the imposition of the death penalty on a person who committed an offense while under the age of sixteen. Thompson v. Oklahoma, 487 U.S. 815, 838, 108 S.Ct. 2687, 2700, 101 L.Ed.2d 702 (1988). The United States Supreme Court, however, has refused to find a constitutional impediment to imposition of the death penalty on juvenile offenders who are over the age of sixteen or seventeen years or older. Wills v. Texas, — U.S. —, 114 S.Ct. 1867, 128 L.Ed.2d 488 (1994); Callins v. Collins, — U.S. —, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994). Although Mississippi fails to set a specific minimum age at which one may be eligible for the death penalty, this Court has stated that “[t]here is no constitutional impediment to the imposition of the death sentence on a seventeen year old under the Mississippi statutes even though the age at which one may receive a death sentence for the crime of capital murder is implied rather than explicitly stated.” Foster, 639 So.2d at 1297. “[S]uch specificity is not necessary to avoid constitutional problems if it is clear that no national consensus forbids the imposition of capital punishment for crimes committed at such an age.” Wilkins v. Missouri, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989). Consequently, there is no prohibition in sentencing this seventeen-year-old defendant to death merely because our statutes do not explicitly state that a sixteen- or seventeen-year-old defendant may be punished with execution for a capital crime. See Foster, 639 So.2d at 1297-98, cert. denied, — U.S. —, 115 S.Ct. 1365, 131 L.Ed.2d 221 (1995) (Mississippi’s failure to set minimum age for imposition of death penalty does not make it unconstitutional to execute defendant who committed capital murder when seventeen years old).
Holly further asserts that pursuant to Stanford v. Kentucky, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989), since no particularized findings as to his maturity and moral responsibility were made, his conviction must be set aside. Stanford imposes no such responsibility upon states. Rather, in dicta, the Supreme Court merely noted that “the determinations required by juvenile transfer statutes to certify a juvenile for trial as an adult ensure individualized consideration of the maturity and moral responsibility of 16- and 17-year-old offenders before they are even held to stand trial as adults.” Stanford, 492 U.S. at 375, 109 S.Ct. at 2978, 106 L.Ed.2d at 322. There being no constitutional impediments to the imposition of the death penalty on a juvenile offender who was seventeen years old at the time of the crimes for which he was convicted, we find no merit to Holly’s arguments.
XIII. WHETHER THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY THAT THE CRIME OF KIDNAPPING REQUIRES THE ELEMENT OF AS-PORTATION.
The circuit court granted Instruction S-2 on the charge of kidnapping, charging the jury that if it found that Holly “did willfully, unlawfully, and feloniously, forcibly seize and confine David James Norwood, Jr. *43 with the intent to cause the said, David James Norwood, Jr. to be deprived of his liberty and held against his will, then you shall find the defendant guilty of kidnapping in Count II.” Relying on Aikerson v. State, 274 So.2d 124, 128 (Miss.1973), for the proposition that the victim must have been moved from one place to another, Holly contends that the instruction erroneously omitted the element of asportation.
Miss.Code Ann. § 97-3-53, in relevant part, defines kidnapping as when “[ajny person who shall without lawful authority forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause that person to be secretly confined or imprisoned against his or her will....” The elements of the crime were clarified as follows in Hughes v. State, 401 So.2d 1100 (Miss.1981):
Every person who shall, without lawful authority
(1) forcibly seize and confine any other,
(2) or shall inveigle or kidnap any other
(3) with intent
(a) to cause such person to be secretly confined or imprisoned in the state against his will,
(b) or to cause such other person to be sent out of this state against his will,
(c) or to cause such other person
(1) to be deprived of his liberty,
(2) or in any way held to service against his will ...
Under the statute the state must prove that a person, without lawful authority, either (1) forcibly seized and confined another person, or (2) inveigled or kidnapped another person, intending to subject such person to either (a), (b), or (c) above.
Hughes, 401 So.2d at 1105. In Carr v. State, 655 So.2d 824 (Miss.1995), we rejected the Aikerson argument raised by an appellant who, like Holly, assigned as error the failure to include the element of asportation in a kidnapping instruction. We specifically stated that § 97-3-53 “does not require any allegation of transportation of the victim,” and deemed the jury to have been properly instructed on the underlying felony of kidnapping. Carr, 655 at 849. Further, we reiterated that “ ‘asportation was not a necessary ingredient of the indictment, so long as the indictment charges the victim was imprisoned against his will.’” Id. (quoting Brewer v. State, 459 So.2d 293, 296 (Miss.1984)). Count II of the indictment, which charged Holly and his friends with kidnapping, contains the requisite language, stating that the three caused Norwood to be “confined and imprisoned and deprived of his liberty against his will.... ” Accordingly, we do not hold the circuit court in error for granting Instruction S-2.
XIV. WHETHER HOLLY’S STATE AND FEDERAL CONSTITUTIONAL RIGHT NOT TO BE TWICE PUT IN JEOPARDY FOR THE SAME OFFENSE WAS VIOLATED WHEN THE JURY WAS ALLOWED TO CONVICT HIM OF BOTH MURDER DURING THE COMMISSION OF A ROBBERY AND THE LESSER INCLUDED OFFENSE OF GRAND LARCENY.
Holly was found guilty of capital murder under Count I[1] of the indictment which charged him with the murder of David Norwood during the course of armed robbery. He was also found guilty of grand larceny pursuant to Count III[2] of the indiet *44 ment for the taking and carrying away of Neely Cab Co.’s automobile. Holly argues that his convictions for grand larceny and capital murder constituted a double jeopardy violation because the elements of grand larceny in our statutory scheme are completely enveloped by the crime of robbery which was used to elevate a charge of simple murder into capital murder. In other words, Holly complains that once a conviction for this category of capital murder is obtained, no other evidence must be produced to convict him of the crime of grand larceny.
There was no double jeopardy concern in simultaneously placing Holly on trial for grand larceny and capital murder committed in the course of a robbery. Stewart v. State, 662 So.2d 552, 560 (Miss.1995); Meeks v. State, 604 So.2d 748, 751 (Miss.1992). Whether Holly may be convicted for both capital murder committed in the course of a robbery and grand larceny poses a more difficult question as the double jeopardy clause prohibits multiple punishments for the same offense. Lanier v. State, 685 So.2d 813, 818 (Miss.1994) (citing North Carolina v. Pearce, 895 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)); Barnette v. State, 478 So.2d 800, 802 (Miss.1985).
Although a state may freely define crimes and assign punishments, it is not allowed to punish a defendant for a crime containing elements which are completely enveloped by an offense for which a defendant was previously convicted. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
If an individual is charged with two offenses, and all the elements of one are included within and are a part of a second greater offense, Blockburger intervenes. It charges that we compare statutory offenses, as indicated, and see whether each requires proof of a fact the other does not.
Stewart, 662 So.2d at 560 (citing Meeks v. State, 604 So.2d 748, 751 (Miss.1992)). Even though there may be a substantial overlap in the proof supporting the convictions of the different crimes, the Blockburger test is met where each offense requires proof of an element not necessary to the other. Brock v. State, 530 So.2d 146, 150 (Miss.1988) (citing Iannelli v. United States, 420 U.S. 770, 785, 95 S.Ct. 1284, 1293, 43 L.Ed.2d 616 (1975)). The focus remains on the statutory elements of the offenses charged instead of the facts presented at trial. Brock, 530 So.2d at 150 (citing Brown v. Ohio, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225-2226, 53 L.Ed.2d 187 (1977)).
Holly’s capital murder conviction fell under Miss.Code Ann. § 97-3-19(2), which provides as follows:
(2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder ... (e) When done with or without design to effect death, by any person engaged in the commission of the crime of ... robbery. ...
Miss.Code Ann. § 97-3-79 provides the definition of those people guilty of the crime of robbery:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon....
Holly’s conviction for grand larceny fell under Miss.Code Ann. § 97-17-41[3] which *45 provided the following definition of the crime when he was charged:
Every person who shall be convicted of taking and carrying away, feloniously, the personal property of another, of the value of Two Hundred Fifty Dollars ($250.00) or more, shall be guilty of grand larceny ...
In Meeks, we precluded the lower court from convicting the defendant for kidnapping and capital murder under the same category of capital murder as presented in the case sub judice because the kidnapping offense was used to elevate a plain murder charge into a capital murder charge. 604 So.2d at 754; see also Fuselier v. State, 654 So.2d 519, 522 (1995) (conviction and sentence for burglary may not stand where burglary was used as basis for capital murder charge). In Jones v. State, 567 So.2d 1189, 1192 (Miss.1990), this Court found the evidence insufficient to convict the defendant of robbery as there was no proof of the element that the store clerk in the back office was placed in fear. However, in finding the evidence sufficient to uphold a charge of grand larceny, we noted that the elements of larceny are contained within the crime of robbery. Id.
Holly contends that he has already been punished for the grand larceny charge because the robbery charge, which was used to elevate this into a case of capital murder, encompassed the elements of grand larceny. The State maintains, however, that grand larceny is not enveloped by the crime of robbery since it requires the additional element that the property taken be worth more than two hundred fifty dollars ($250.00).[4] The State also contends that the capital murder charge was not related to the grand larceny charge in this case because the underlying robbery used to elevate this into a capital murder case involved Holly’s act of stealing David Norwood’s money, whereas the grand larceny charge concerned the theft of the taxi cab from Neely Cab Co.
We find that the monetary amount which distinguishes grand larceny from petit, larceny and robbery is irrelevant for purposes of the double jeopardy analysis. The fact remains that once the State proved the elements of robbery, it was not required to offer any additional proof to establish the charge of grand larceny. The taking of property was the element relevant to establish each charge regardless of its value. Nor was ownership of the property relevant to the double jeopardy analysis in the ease sub ju-dice since the distinction between the exact property used to sustain the different charges was blurred by jury instruction S-l. Instruction S-l, which covered the robbery charge, referred to the personal property of both Neely Cab Co. and David Norwood.[5] Because the State failed to present a clear distinction as to the ownership of the stolen property, the State is not permitted to utilize the elements of grand larceny first, to elevate this murder into a case of capital murder, and once again, to convict and punish Holly for the crime of grand larceny. The conviction for grand larceny in this case could stand only if Holly had been convicted of the single crime of plain murder. For this reason, this Court vacates Holly’s sentence and conviction for the lesser included offense of grand larceny. See United States v. Buckley, 586 F.2d 498, 505 (5th Cir.1978), cert. denied, 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (“where a defendant is improperly convicted for a lesser included offense, the proper remedy is to vacate both the conviction and sentence on the included offense, leaving the conviction and sentence on the greater offense intact”).
XY. WHETHER THE DEATH SENTENCE IS DISPROPORTIONATE IN THIS CASE CONSIDERING THE UNIQUE CHARACTERISTICS OF WILLIAM HOLLY.
Pursuant to Miss.Code Ann. § 99-19-105(3), in addition to reviewing the merits of those issues raised by the defendant, we are required to determine:
*46 (a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;
(b) Whether the evidence supports the jury’s or judge’s findings of a statutory aggravating circumstances as enumerated in Section 99-19-101; and
(c) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
Holly, reiterating arguments made in Issues XI and XII, supra, that “the taking of a child’s life transgresses the modem standard of dignity,” asserts that the death sentence is disproportionate in his case. Since our decision in Jackson v. State, 337 So.2d 1242 (Miss.1976), however, we have upheld the imposition of the death penalty in the cases listed in the Appendix. Three of those eases involved seventeen- and eighteen-year-olds who committed crimes similar to those for which Holly was convicted. In Foster v. State, 639 So.2d 1263 (Miss.1994), we upheld the death penalty in the case of Ronald Chris Foster, who at the age of seventeen, robbed a convenience store and fatally shot the store clerk in the head. Further, in the companion cases of Leatherwood v. State, 435 So.2d 645 (Miss.1983) and Tokman v. State, 435 So.2d 664 (Miss.1983), we found that the death penalty was not disproportionate for a seventeen-year-old and an eighteen-year-old, who together with a third young man, robbed and beat to death a taxi cab driver.
Holly makes several general allegations that the death penalty is not appropriate where the defendant comes from a disadvantaged background or has a low I.Q., arguing that these factors should be considered as mitigating circumstances. The jury was instructed in Sentencing Instruction C-l to consider a panoply of mitigating circumstances, which included:
(1) The age of Defendant at the time of the crime.
(2) As a child Defendant exhibited emotional and scholastic difficulties.
(3) Single parent family.
(4) Defendant lacked father figure.
(5) Defendant endured lonely, isolated, depressed childhood.
(6) Poor school functioning.
(7) Exhibited low self esteem as child.
(8) Lacked positive interactions as child.
(9) Lacked significant positive parental figure.
(10) Lacked guidance and nurturing as a youth.
(11) Lacked social reinforcement based on positive behavior.
(12) Family lacked financial stability.
(13) Economic assistance from father nonexistent.
(14) Exposed to physical abuse of mother by her partner.
(15) Remorse on behalf of Defendant.
(16) Acceptance of responsibility by Defendant.
(17) Any other matter, any other aspect of the defendant’s character or record, and any other circumstance of the offense brought to you during the trial of this cause which you, the jury, deem to be mitigating on behalf of the defendant.
The jury found that these mitigating circumstances were insufficient to outweigh the aggravating factors when sentencing him to death. Given that the jury was afforded the opportunity- to consider fully Holly’s disadvantaged background and that the sentence is not disproportionate to that meted out to juveniles of his age who have committed similar crimes, we cannot say that the death penalty is disproportionate in this case.
XVI. WHETHER THE • AGGREGATE ERROR IN THIS CASE REQUIRES REVERSAL OF THE CONVICTION AND DEATH SENTENCE.
Holly argues that he is entitled to a reversal of his conviction and sentence due to the cumulative errors which, he claims, denied him a fair trial. See, e.g. Hansen v. State, 592 So.2d 114, 153 (Miss.1991); Griffin v. State, 557 So.2d 542 (Miss.1990); Stringer v. State, 500 So.2d 928, 946 (Miss.1986). Since the defense has failed to suggest any meaningful error in the proceedings below with *47 respect to the charges of capital murder and kidnapping, this assignment of error is without merit.
CONCLUSIONS
The assignments of error raised in this appeal with regard to the guilt and sentencing phases of Holly’s capital murder and kidnapping convictions are without merit. We therefore affirm the death penalty and kidnapping convictions in this case. However, in light of Holly’s conviction of capital murder with armed robbery as an underlying offense, conviction on the grand larceny charge constitutes double jeopardy under the particular circumstances of this case. Therefore, we reverse and vacate the grand larceny conviction.
COUNTS I AND II: CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH AFFIRMED. EXECUTION DATE TO BE SET WITHIN SIXTY DAYS OF FINAL DISPOSITION OF THIS CASE PURSUANT TO MISS.CODE ANN. § 99-19-105(7X1972) AND M.R.A.P. 41(a).
COUNT III: CONVICTION OF GRAND LARCENY REVERSED; VACATED.
DAN M. LEE, C.J., PRATHER and SULLIVAN, P. JJ., and PITTMAN, BANKS, JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., concur.

APPENDIX

DEATH CASES AFFIRMED BY THIS COURT

Davis v. State, 660 So.2d 1228 (Miss.1995).
Carr v. State, 655 So.2d 824 (Miss.1995)
Mack v. State, 650 So.2d 1289 (Miss.1994)
Chase v. State, 645 So.2d 829 (Miss.1994)
Foster v. State, 639 So.2d 1263 (Miss.1994)
Conner v. State, 632 So.2d 1239 (Miss.1993).
Hansen v. State, 592 So.2d 114 (Miss.1991).
* Shell v. State, 554 So.2d 887 (Miss.1989), Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) reversing, in part, and remanding, Shell v. State, 595 So.2d 1323 (Miss.1992) remanding for new sentencing hearing.
Davis v. State, 551 So.2d 165 (Miss.1989).
Minnick v. State, 551 So.2d 77 (Miss.1989).
* Pinkney v. State, 538 So.2d 329 (Miss.1989), Pinkney v. Mississippi, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990) vacating and remanding Pinkney v. State, 602 So.2d 1177 (Miss.1992) remanding for new sentencing hearing.
* Clemons v. State, 535 So.2d 1354 (Miss.1988), Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) vacating and remanding, Clemons v. State, 593 So.2d 1004 (Miss.1992) remanding for new sentencing hearing.
Woodward v. State, 533 So.2d 418 (Miss.1988).
Nixon v. State, 533 So.2d 1078 (Miss.1987).
Cole v. State, 525 So.2d 365 (Miss.1987).
Lockett v. State, 517 So.2d 1346 (Miss.1987).
Lockett v. State, 517 So.2d 1317 (Miss.1987).
Faraga v. State, 514 So.2d 295 (Miss.1987).
* Jones v. State, 517 So.2d 1295 (Miss.1987), Jones v. Mississippi, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988) vacating and remanding, Jones v. State, 602 So.2d 1170 (Miss.1992) remanding for new sentencing hearing.
Wiley v. State, 484 So.2d 339 (Miss.1986).
Johnson v. State, 477 So.2d 196 (Miss.1985).
Gray v. State, 472 So.2d 409 (Miss.1985).
Cabello v. State, 471 So.2d 332 (Miss.1985).
Jordan v. State, 464 So.2d 475 (Miss.1985).
Wilcher v. State, 455 So.2d 727 (Miss.1984).
Billiot v. State, 454 So.2d 445 (Miss.1984).
Stringer v. State, 454 So.2d 468 (Miss.1984).
Dufour v. State, 453 So.2d 337 (Miss.1984).
Neal v. State, 451 So.2d 743 (Miss.1984).
Booker v. State, 449 So.2d 209 (Miss.1984).
Wilcher v. State, 448 So.2d 927 (Miss.1984).
Caldwell v. State, 443 So.2d 806 (Miss.1983).
*48 Irving v. State, 441 So.2d 846 (Miss.1983).
Tokman v. State, 435 So.2d 664 (Miss.1983).
Leatherwood v. State, 435 So.2d 645 (Miss.1983).
Hill v. State, 432 So.2d 427 (Miss.1983).
Pruett v. State, 431 So.2d 1101 (Miss.1983).
Gilliard v. State, 428 So.2d 576 (Miss.1983).
Evans v. State, 422 So.2d 737 (Miss.1982).
King v. State, 421 So.2d 1009 (Miss.1982).
Wheat v. State, 420 So.2d 229 (Miss.1982).
Smith v. State, 419 So.2d 563 (Miss.1982).
Johnson v. State, 416 So.2d 383 (Miss.1982).
Edwards v. State, 413 So.2d 1007 (Miss.1982).
Bullock v. State, 391 So.2d 601 (Miss.1980).
Reddix v. State, 381 So.2d 999 (Miss.1980).
Jones v. State, 381 So.2d 983 (Miss.1980).
Culberson v. State, 379 So.2d 499 (Miss.1979).
Gray v. State, 375 So.2d 994 (Miss.1979).
Jordan v. State, 365 So.2d 1198 (Miss.1978).
Voyles v. State, 362 So.2d 1236 (Miss.1978).
Irving v. State, 361 So.2d 1360 (Miss.1978).
Washington v. State, 361 So.2d 61 (Miss.1978).
Bell v. State, 360 So.2d 1206 (Miss.1978).

DEATH CASES REVERSED AS TO GUILT PHASE AND SENTENCE PHASE

Giles v. State, 650 So.2d 846 (Miss.1995)
Duplantis v. State, 644 So.2d 1235 (Miss.1994)
Harrison v. State, 635 So.2d 894 (Miss.1994)
Butler v. State, 608 So.2d 314 (Miss.1992).
Jenkins v. State, 607 So.2d 1171 (Miss.1992).
Abram v. State, 606 So.2d 1015 (Miss.1992).
Balfour v. State, 598 So.2d 731 (Miss.1992).
Griffin v. State, 557 So.2d 542 (Miss.1990).
Bevill v. State, 556 So.2d 699 (Miss.1990).
West v. State, 553 So.2d 8 (Miss.1989).
Leatherwood v. State, 548 So.2d 389 (Miss.1989).
Mease v. State, 539 So.2d 1324 (Miss.1989).
Houston v. State, 531 So.2d 598 (Miss.1988).
West v. State, 519 So.2d 418 (Miss.1988).
Davis v. State, 512 So.2d 1291 (Miss.1987).
Williamson v. State, 512 So.2d 868 (Miss.1987).
Foster v. State, 508 So.2d 1111 (Miss.1987).
Smith v. State, 499 So.2d 750 (Miss.1986).
West v. State, 485 So.2d 681 (Miss.1985).
Fisher v. State, 481 So.2d 203 (Miss.1985).
Johnson v. State, 476 So.2d 1195 (Miss.1985).
Fuselier v. State, 468 So.2d 45 (Miss.1985).
West v. State, 463 So.2d 1048 (Miss.1985).
Jones v. State, 461 So.2d 686 (Miss.1984).
Moffett v. State, 456 So.2d 714 (Miss.1984).
Lanier v. State, 450 So.2d 69 (Miss.1984).
Laney v. State, 421 So.2d 1216 (Miss.1982).

DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR RESENTENCING TO LIFE IMPRISONMENT

Reddix v. State, 547 So.2d 792 (Miss.1989).
Wheeler v. State, 536 So.2d 1341 (Miss.1988).
White v. State, 532 So.2d 1207 (Miss.1988).
Bullock v. State, 525 So.2d 764 (Miss.1987).
Edwards v. State, 441 So.2d 84 (Miss.1983).
Dycus v. State, 440 So.2d 246 (Miss.1983).
Coleman v. State, 378 So.2d 640 (Miss.1979).

DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY

* Shell v. State, 554 So.2d 887 (Miss.1989), Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) reversing, in part, and remanding, Shell v. State 595 So.2d 1323 (Miss.1992) remanding for new sentencing hearing.
*49 * Pinkney v. State, 538 So.2d 329 (Miss.1989), Pinkney v. Mississippi 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990) vacating and remanding, Pinkney v. State, 602 So.2d 1177 (Miss.1992) remanding for new sentencing hearing.
* Clemons v. State, 535 So.2d 1354 (Miss.1988), Clemons v. Mississippi 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) vacating and remanding, Clemons v. State, 593 So.2d 1004 (Miss.1992) remanding for new sentencing hearing.
* Jones v. State, 517 So.2d 1295 (Miss.1987), Jones v. Mississippi 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988) vacating and remanding, Jones v. State, 602 So.2d 1170 (Miss.1992) remanding for new sentencing hearing.
Russell v. State, 607 So.2d 1107 (Miss.1992).
Holland v. State, 587 So.2d 848 (Miss.1991).
Willie v. State, 585 So.2d 660 (Miss.1991).
Ladner v. State, 584 So.2d 743 (Miss.1991).
Mackbee v. State, 575 So.2d 16 (Miss.1990).
Berry v. State, 575 So.2d 1 (Miss.1990).
Turner v. State, 573 So.2d 657 (Miss.1990).
State v. Tokman, 564 So.2d 1339 (Miss.1990).
Johnson v. State, 547 So.2d 59 (Miss.1989).
Williams v. State, 544 So.2d 782 (Miss.1989).
Lanier v. State, 533 So.2d 473 (Miss.1988).
Stringer v. State, 500 So.2d 928 (Miss.1986).
Pinkton v. State, 481 So.2d 306 (Miss.1985).
Mhoon v. State, 464 So.2d 77 (Miss.1985).
Cannaday v. State, 455 So.2d 713 (Miss.1984).
Wiley v. State, 449 So.2d 756 (Miss.1984).
Williams v. State, 445 So.2d 798 (Miss.1984).

. Count I of the indictment read as follows:
WILLIAM JOSEPH HOLLY, TOMMY G. BENEFIELD and WAYLAN KENDALL late of the county aforesaid, on or about the 12th day of July, 1992, in the count aforesaid and within the jurisdiction of this Court, while acting in concert with, or aiding, abetting, assisting or encouraging each other, did wilfully, unlawfully, feloniously, and with deliberate design, kill David Norwood, Jr., a human being, by then and there shooting him with a shotgun, and while engaged in the commission of the felony crime of ARMED ROBBERY, in violation of Miss.Code Arm. § 97-3-79 and § 97-3-19(2)(e), (Supp.1972, as amended) and constituting a series of related acts or transaction, or a common scheme or plan.

. Count III of the indictment read as follows:
WILLIAM JOSEPH HOLLY, TOMMY G. BENEFIELD and WAYLAN KENDALL late of the county aforesaid, on or about the 12th day of July, 1992, in the county aforesaid and within the jurisdiction of this Court, while acting in *44 concert with, or aiding, abetting, assisting, or encouraging each other, did wilfully, unlawfully and feloniously with the felonious intent to permanently deprive the owner thereof, take, steal and carry away the personal property of Edward Neely d/b/a Neely’s Cab, to wit:
One 1985 White Ford LTD Automobile
a further and more complete description being to the Grand Jury unknown, and of the total and aggregate value of more than One Hundred ($100.00) dollars in lawful United States money, against the peace and dignity of the State of Mississippi.

. The statute was amended effective July 1, 1992 to increase the value of properly taken to two hundred fifty dollars ($250.00). See Miss.Code Ann. § 97-17--4-1 (1994). The indictment erroneously charged Holly with the theft of property greater than one hundred dollars ($100.00). However, jury instruction S-3 properly required the jury to find the property greater than two hundred fifty dollars ($250.00) in value to support a conviction for grand larceny.

. The State failed to reflect the change in Miss. Code Ann. § 97-17-41 in its brief. However, the exact monetary value does not alter the effect of the State's argument or the resolution of this issue.

. The words "money and money orders” were handwritten above "personal property of Neely Cab Company and/or David James Norwood” in jury instruction S-l.

 Case was originally affirmed in this Court but on remand from U.S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

 Case was originally affirmed in this Court but on remand from U.S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

 Case was originally affirmed in this Court but on remand from U.S. Supreme Court, case was remanded by this Court for a new sentencing hearing.