600 So.2d 938 (1992)
Viola PERKINS
v.
STATE of Mississippi.
No. 89-KA-0279.
Supreme Court of Mississippi.
May 13, 1992.
Rehearing Denied July 1, 1992.
*939 Sim C. Dulaney, Jr., Port Gibson, for appellant.
Michael C. Moore, Atty. Gen., Patricia W. Sproat, Jean Smith Vaughan, Sp. Asst. Attys. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and McRAE, JJ.
HAWKINS, Presiding Justice, for the Court:
Viola Perkins is appealing a conviction of murder after trial by jury in the Claiborne County Circuit Court, Judge John E. Ellis, presiding. She was sentenced to life in the custody of the Mississippi Department of Corrections. We affirm.

FACTS
On Sunday morning, May 8, 1988, at approximately 9:00 or 9:30, police officer Jerry Caston responded to a disturbance at the residence of LeRoy Claiborne. Upon arrival he found the front door glass had been broken. Viola Perkins, who was living with Claiborne at the time, told him that David Gibson had broken the glass and threatened to beat her. She told Caston that she was tired of Gibson beating her and asked him to tell Gibson to leave her alone. Caston told Viola that she could file charges against Gibson. She never did, so the police did not attempt to arrest Gibson. In his report, Officer Caston wrote: "Viola Perkins said that David Gibson had busted glass on door on north side of house and had threatened to beat her. And she asked that I talk to him before she hurt him. She was advised that she could file charges." David Gibson was living with his mother, Estella Gibson, who testified that on that Sunday Viola had called the house several times after 7:00 a.m., but David refused to talk to her.
Viola and Gibson had been involved in a personal relationship about seven and a half months. Viola testified that he had beaten her for the past five months. Several witnesses testified that they had seen Gibson hitting Viola and Viola hitting back in several bars around Port Gibson. Gibson had been found guilty of disturbing the peace  involving Viola  on February 19, 1988, and found guilty of assaulting Viola on March 25, 1988, in justice court, so the police were aware of the violent relationship between Viola and Gibson.
Viola testified that on the Sunday morning of the shooting Gibson forced his way into the house by breaking through the glass door. He began choking Viola, who resisted by hitting him. Her five- or six-year-old son began hitting Gibson in the face. Gibson threw him across the room. Viola was able to get away from Gibson. She ran outside to the car and retrieved a .32 caliber pistol, but by this time Gibson *940 was running down the street threatening to blow up her house. Viola called the police, which prompted Caston to respond.
Around 1:00 on that Sunday afternoon, Viola drove to Juanita O'Donnell's home because she was upset and angry about the incident involving Gibson that morning. Juanita was not at home so Viola left. As she pulled onto Highway 61, she saw Gibson walking down Highway 18 and drove towards him. David Gibson was at Dora's Place on Highway 18, and yelled to three females, Priscilla Trevillion, Johnnie Gusta and Barbara Brandon, who were walking on the highway towards Dot's Place, to wait. He was about thirty feet behind them.
The three females were almost hit by a speeding car. Startled, they turned around and recognized Viola as the driver. Alphonso Thomas, who was sitting in front of Tankum's Shop on Highway 18 where the three females were, also recognized Viola. Viola slowed down and pulled off in front of Gibson who was walking to catch up with the three females. The three females could see the rear and part of the driver's side of the car. Priscilla Trevillion stated that she could see Gibson and the car at the same time. Gibson was facing the passenger side.
Eddie Jones, who had been at Dora's Place, was walking behind Gibson. As Viola drove the car beside Gibson, Jones saw Viola's hand go up and testified he saw her "grit" her teeth. He then heard a gun fire from the car. The females also heard the gun fire and ran for cover behind a truck.
Gibson bent over and began to stumble towards the truck the females ran behind. Jones heard him say, "Viola shot me." Gibson tried to sit on the tailgate of the truck but stumbled to the ground. He said to Thomas, "Viola shot me." Barbara Brannon also heard him say that Viola shot him. Thomas testified that Gibson had been shot in the stomach area, and he put Gibson in the truck and took him to the hospital.
Dora Kemp, the owner of Dora's Place, called the sheriff and gave a description of the car Viola was driving. Claiborne County Sheriff Frank Davis located the car and discovered a package of.32 caliber cartridges inside the car. Viola was eventually found in Vicksburg and told the police that the weapon was at LeRoy Claiborne's house where she lived  in a storage room. The police found the gun, a .32 caliber pistol, which had been fired once with five live rounds remaining.
Viola admitted that she shot David Gibson stating:
I stopped and I asked him, I said, "Why did you come in the house and do us like that?" And he bent down to the car and said, "I will blow all of y'all up." And I picked up the gun and shoot [sic] out the window at him.
Viola said that it was not her intention to shoot Gibson, but "just to scare him." She testified that she looked back after driving off and saw that Gibson was holding his stomach and said, "Oh God, I done shot him."

LAW

I. ERRONEOUS TESTIMONY
Viola urges reversal because of erroneous testimony offered at trial by the State. Eddie Jones, who was with Gibson just before the shooting and also witnessed the shooting, testified that Gibson told him that Viola had killed two persons:
Q: All right. Did he say anything to her before the shot was fired?
A: Okay. Okay. When he come sit on the picnic benches, he told me 
Q: (Interposing) No. No. Not  . Did he say anything to 
A: (Continuing) He didn't say nothing to her.
Q: (Continuing) her when she drove up?
A: No.
Q: All right. And when you were talking to him before, did he mention anything about Viola Perkins?
A: Yeah. He told me that she said she had already killed two and he was last 

*941 BY MR. DULANEY:
(Interposing) Your Honor, I am going to object to that.
BY THE COURT:
Yes sir. That objection is sustained. The jury should disregard that.
Viola moved for a mistrial based on witness Jones' testimony, which the judge denied.
Rule 404(b) of the Mississippi Rules of Evidence (M.R.E.) states:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
The trial court did not abuse its discretion in finding that Jones' statement did not require a mistrial. He sustained the objection and directed the jury to disregard the improper testimony.
We recently stated in Roundtree v. State, 568 So.2d 1173, 1178 (Miss. 1990), that:
Case law unequivocally holds that the trial judge "is in the best position for determining the prejudicial effect" of an objectionable remark. The judge is provided considerable discretion to determine whether the remark is so prejudicial that a mistrial should be declared. Where "serious and irreparable damage" has not resulted, the judge should "admonish the jury then and there to disregard the impropriety." [citations omitted]
Additionally, in Estes v. State, 533 So.2d 437, 439 (Miss. 1988), we reiterated that "[i]t is well settled that when the trial judge sustains an objection to testimony and he directs the jury to disregard it, prejudicial error does not result."

II. SHERIFF IN COURTROOM
Viola argues as grounds for reversal that Sheriff Frank Davis testified for the State and was not sequestered after "the Rule"  M.R.E. Rule 615  was invoked by the court. Viola made an objection before he testified. The following transpired when Sheriff Frank Davis was called to testify for the State:
BY MR. DULANEY:
Your honor, I am going to object to the sheriff testifying on the grounds he has been in the courtroom the entire time. I believe we have some case law that says if the sheriff is going to be a witness for the prosecution he has to excuse himself from other witnesses.
BY THE COURT:
Let me see counsel at the bench.
BY THE COURT:
With the statements made by the assistant district attorney with regards to the posed testimony of the sheriff which were made at the bench conference, the Court does hereby overrule your request, Mr. Dulaney, that asked that the sheriff be precluded from testifying on the grounds that he has been inside the courtroom during the testimony of other witnesses.
Claiborne County is a small county. We have had a large number of spectators and witnesses in the courtroom. The sheriff is an officer of the court and the court needed to have the presence of the sheriff to insure order in the court and for an orderly arrangement.
Let the record further show that the sheriff being aware that he may have been called as a witness has purposely refrained from having any contact and has kept away from the jurors as observed and previously noticed by the Court. The jurors are being handled and processed by bailiffs in the courtroom without any contact from the sheriff. Therefore, the sheriff will be permitted to testify.
Sheriff, take the stand. Call the sheriff.
The sheriff testified that a package of .32 caliber cartridges was found in the car Viola was recognized driving and that she told him where the gun was she used to shoot Gibson. The sheriff found a .32 caliber pistol with five live rounds and one empty casing where Viola indicated.
*942 Rule 615 M.R.E., concerning the exclusion of witnesses, states:
At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employer of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.
We addressed this issue in Douglas v. State, 525 So.2d 1312 (Miss. 1988), where the sheriff was also not sequestered and testified in rebuttal for the State. The trial court was found to be in error by allowing the sheriff to testify since the sheriff was not designated by the District Attorney as the chief investigating officer in the case, nor was it shown that his presence in the courtroom was necessary to assist the prosecution at trial. The Court reasoned that the prosecution should have anticipated that the sheriff would testify and should have followed the rule accordingly.
We further found that the trial court erred in allowing the sheriff to testify without first determining that the defendant would not suffer prejudice from his testimony in violation of the sequestration rule. Despite this, we did not consider the error sufficient enough to prejudice the defendant.
In a specially concurring opinion, Chief Justice Lee observed:
I would interpret Rule 615 to give the trial judge authority in deciding that the sheriff, or courtroom deputy, is essential in operation of the court for the presentation of the cause than a person whose presence is shown by a party to be essential to the presentation of the cause. The court has always exercised its discretion in determining whether or not a party has been prejudiced by a violation of the sequestration rule and I would give the same interpretation to part (3) of Rule 615... . I do not think the lower court erred in permitting the sheriff to testify in rebuttal after performing his duties in the courtroom throughout the trial. The opinion refers to the trial judge judge's action as "error," but then held that such error was not prejudicial. I would not call it error.
Id. at 1319-20.
In this case, before Sheriff Davis testified the judge stated in conference with counsel that based on "statements made by the assistant district attorney with regards to the proposed testimony of the sheriff which were made at the bench conference, the Court does hereby overrule [defendant's] request." The judge discussed with counsel at the bench whether the sheriff's presence in the courtroom was necessary and if it prejudiced the defendant in any way. The judge noted that there had been a number of spectators watching the trial and the record indicates several incidents where the trial judge had to warn the spectators to refrain from comments and other commotions, supporting his decision to keep the sheriff in the courtroom to control the crowd if necessary. Furthermore, the judge was assured that the sheriff had not come into any contact with the jurors which would prejudice the defendant.
There was no abuse of discretion in not sequestering the sheriff. The circuit judge noted the special circumstances which required the presence of the sheriff in the courtroom, and found that the defendant would not suffer prejudice therefrom. The judge also took additional precautions in discussing the matter with counsel prior to the sheriff testifying.

III. READING TESTIMONY TO JURY
After the jurors had been deliberating for two hours, they sent the trial judge the following note:
May we have part of Viola's testimony read to us? The part that describes what happened when she approached David in the car until the time she fired the shot?
The judge responded to the jury's request with the following statement:
The law does not permit the recorded nor the transcribed testimony to be given to *943 the jury after jury deliberations are commenced.
The law does place the duty on all 12 jurors to discuss the testimony with the purpose of reaching a unanimous decision as to testimony which you can recall of a witness and in turn to reach a unanimous verdict.
Thirty minutes later, the jury returned a guilty verdict. Viola did not raise an objection to this communication at trial.
Viola urges that the judge's failure to bring the jury into the courtroom and determine the reason for their communication to him and prevent any confusion among jurors constituted reversible error. She argues that the jury was not seeking the application of law, so it was not necessary for the court to "further instruct the jurors as to their duty and purpose of reaching a unanimous decision on the testimony or a unanimous verdict" as set forth in Nicolaou v. State, 534 So.2d 168 (Miss. 1988).
This Court's well-settled rule is not to consider such an assignment where no objection was made at trial. Berry v. State, 575 So.2d 1, 9 (Miss. 1990); Cole v. State, 525 So.2d 365, 369 (Miss. 1987). Moreover, the circuit judge did not abuse his discretion in declining to have a witness' testimony read to the jury during its deliberation. See United States v. Schmitt, 748 F.2d 249, 256 (5th Cir.1984).

IV. SUFFICIENCY OF THE EVIDENCE
Viola finally argues that the evidence was insufficient to prove malice aforethought and support her murder conviction. We find no merit in this assignment of error.
AFFIRMED.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and McRAE, JJ., concur.
DAN M. LEE, P.J., concurs as to Parts I, III and IV, and dissents without written opinion as to Part II.
BANKS, J., specially concurs with separate written opinion joined by ROY NOBLE LEE, C.J., and PRATHER and ROBERTSON, JJ.
BANKS, Justice, concurring:
I agree with the result reached by the majority. I write separately to express a concern regarding procedure.
In my view, where a sheriff is to be a witness, the question of his being excused from the rule of sequestration should be dealt with prior to trial. It is incumbent upon the party offering the witness or the witness to suggest reasons for relaxing Rule 615 at the time that it is invoked. See, Douglas v. State, 525 So.2d 1312, XXXX-XXXX (Miss. 1988). That was not done here. After-the-fact justifications put undue pressure on the trial judge and should be avoided by dealing with the issue at the beginning of the trial. Moreover, prior discussion may result in alternate solutions to accomodate any competing interests that may appear.
In the instant case, it appears that the error was harmless because the sheriff did not testify to facts touched upon by other witnesses. Moreover, the record reflects that the sheriff was identified as a witness prior to trial and, nevertheless, obviously remained in the courtroom. The defendant, then, bears some responsibility for the failure to treat this issue in a timely manner. Knowing that the sheriff was on the state's list of witnesses, the defendant could have lodged a protest to his presence long prior to the sheriff being called to the stand. By her silence the defendant can be deemed to have waived any objection. Sandbagging, by either party, is no longer a favored tactic in our system of justice.
ROY NOBLE LEE, C.J., and PRATHER and ROBERTSON, JJ., join in this opinion.