797 So.2d 277 (2001)
Jessie WILSON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-02037-COA.
Court of Appeals of Mississippi.
February 27, 2001.
*279 Ray Charles Carter, Madison, Attorney for Appellant.
Office of the Attorney General by Charles W. Maris Jr., Attorneys for Appellee.
Before KING, P.J., BRIDGES, and THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. Jessie Wilson was convicted of conspiracy to commit burglary and burglary. Wilson asserts the following errors on appeal:
I. WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
II. DID THE PROSECUTION COMMIT REVERSIBLE ERROR BY COMMENTING ON WILSON'S RIGHT TO NOT TESTIFY?
III. DID THE TRIAL COURT ERR IN ADMITTING INFLAMMATORY AND PREJUDICIAL PHOTOGRAPHS INTO EVIDENCE?
IV. WAS WILSON DENIED A FAIR TRIAL IN BELZONI, HUMPHREYS COUNTY, MISSISSIPPI DUE TO PRETRIAL PUBLICITY?
V. DID THE TRIAL COURT ERR IN ALLOWING THE TESTIMONY OF RIVA BROWN.

FACTS
¶ 2. On May 11, 1998, Christine Smith left her eleven year old son, Steven, and her thirteen year old daughter, Lekisha, at home alone while she went to work at the Jockey International plant. Both children were home sick for the day. Christine returned for lunch at noon. After seeing that the children were fed, Christine returned to work.
¶ 3. At 12:55, Zina McFarland, who answered the telephone at the Jockey plant, received a call from "a child with a soft or choking voice." McFarland testified that the child said, "I'm dying! I'm dying! Let me talk to my mama!" followed by breathing, but no words. A call to the police to trace the call was unsuccessful; however, police officer Greg Lampkin arrived at the Jockey plant. The supervisors at the Jockey plant were told to check if anyone working had a child with asthma. Christine fit that description and immediately dialed home but got a busy signal. Officer Lampkin and Christine proceeded to her house. Upon entering the door they saw large pools of blood on the floor. Lampkin searched the house while Christine waited outside. Lampkin found the bodies of Steven and Lekisha in a bedroom. *280 Lekisha had a fatal gunshot wound to the face. Steven suffered from multiple fatal stab wounds. Lampkin discovered that the kitchen door had been forced open.
¶ 4. The knife used in the crime was found in the Smith house. The gun used in the crime belonged to Christine and was later found in the back yard of Wilson's residence. Wilson's residence is behind and immediately adjacent to the Smith's residence. Forensic evidence collected showed Antwon McDaniel's fingerprints were found in the house on the knife used to kill Steven and on the gun used to kill Lekisha.
¶ 5. Nancy Rodgers, a neighbor of the Smiths, testified that on the day of the killings she was on her way back to work at 12:55 when she saw two "suspicious acting" males on the sidewalk in front of the Smith house. She stated that they were trying to hide something, turning away from her in order to hide an item. Rodgers was unsure of the size and shape of this item but did note that it was brown in color. Rodgers offered a description of these two males and positively identified Wilson as one of them. She further explained that as she drove by, Wilson disappeared between two houses.
¶ 6. Reva Brown, a news reporter employed by the Clarion Ledger, talked with Wilson on May 13, 1998. Wilson identified himself to Brown as "Tony Young" and told her that he had seen McDaniel shortly after one o'clock in the afternoon on the day of the murders. These statements Wilson offered to Brown were conflicting with those Wilson would later give to the police.
¶ 7. McDaniel was subsequently arrested. Without objection, Officer Lampkin, who interrogated McDaniel, testified that McDaniel claimed that both he and Wilson planned to burglarize the Smiths' house, believing there was gold in the house. Based on this information, Wilson was interviewed by Officer Bingham on May 14, 1998.
¶ 8. The May 14 interview was recorded and a transcript of the tape was entered into evidence by the prosecution during the testimony of Officer Bingham. During this interview, Bingham thoroughly and exhaustively explained the Miranda rights to Wilson. Bingham further explained that Wilson was not under arrest. Wilson claimed that while McDaniel solicited him to burglarize the Smith house four or five weeks earlier, he rejected McDaniel's offer and had no part in the burglary whatsoever.
¶ 9. Officer Bingham interviewed Wilson again on May 20, 1998. This interview was also recorded and a transcript of the tape was entered into evidence by the prosecution during the testimony of officer Bingham. Wilson's mother, Louella Wilson, was present for this interview. Wilson was again extensively explained of his Miranda rights. Wilson explained that McDaniel asked if he would participate in the burglary of the Smith house on the morning of May 11. Wilson admitted that he walked over to the house with McDaniel and immediately before McDaniel broke in, he told McDaniel that he would not have anything to do with the burglary. At this time Wilson claimed that he walked to the park and returned to his residence. Wilson stated that thirty to forty-five minutes later, McDaniel returned. Wilson described McDaniel as sweating and saying that he was ready to die, calling himself a coward. Wilson then explained that Ms. Smith and police arrived about fifteen minutes later. McDaniel explained to Wilson that the two children were in the house when he entered it, and later told him that he had murdered the children. When asked about the gun, Wilson explained that *281 after the burglary the gun had three bullets left in it, and that it was jammed. Wilson claimed that he saw the condition of this gun from his porch. When told that he was seen in front of the Smith house with McDaniel at 12:55, Wilson explained that McDaniel was attempting to talk him into participating in the burglary at that time. Wilson admitted that while he had nothing in his hands at that time, McDaniel was holding a brick. Wilson denied that McDaniel came to his apartment after the burglary had taken place.
¶ 10. Wilson was indicted on July 31, 1998 for two counts of capital murder for the deaths of Steven Smith and Lakisha A. Smith, while committing a burglary on May 11, 1998. Those charges were dismissed, and Wilson was re-indicted on April 22, 1999 for one count of conspiracy to commit burglary, one count of burglary and one count of accessory after the fact to capital murder. Trial commenced on November 18, 1999, and ended the following day. Wilson was found guilty on all counts. Wilson was sentenced to serve concurrent terms of five, fifteen and five years, respectively, in the custody of the Mississippi Department of Corrections. Wilson's Motion for New Trial was denied; however, the trial court held that the prosecution failed to produce evidence in which a jury could find Wilson guilty of accessory after the fact to murder without committing an unconscionable injustice, and the accessory after the fact to murder count was dismissed. From these convictions, Wilson appeals.

ANALYSIS

I. WAS THE VERDICT OF THE LOWER COURT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 11. The decision to grant or deny a motion for new trial is discretionary with the trial court. McClain v. State, 625 So.2d 774, 781 (Miss.1993). In order to preserve the issue for consideration on appeal, the defendant must raise the issue that the verdict was against the overwhelming weight of the evidence as a ground for his motion for new trial. Howard v. State, 507 So.2d 58, 63 (Miss.1987). In Ford v. State, 753 So.2d 489, 490 (Miss. Ct.App.1999), we held that:
[i]n determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence presented as supportive of the verdict, and we will disturb a jury verdict only when convinced that the circuit court has abused its discretion in failing to grant a new trial or if the final result will result in an unconscionable injustice.
(citing Danner v. State, 748 So.2d 844, 846 (Miss.Ct.App.1999)). See also Turner v. State, 726 So.2d 117, 125 (Miss.1998); Herring v. State, 691 So.2d 948, 957 (Miss. 1997); Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). "Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system." Hughes v. State, 724 So.2d 893, 896 (Miss.1998). "In determining whether a jury verdict is against the overwhelming weight of the evidence, the court accepts as true the evidence favorable to the State." Wetz v. State, 503 So.2d 803, 812 (Miss.1987). See also McClain, 625 So.2d at 781; Van Buren v. State, 498 So.2d 1224, 1229 (Miss.1986). It has also been established that "the jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by each witness." Meshell v. State, 506 So.2d 989, 991 (Miss.1987). See also Hilliard v. State, 749 So.2d 1015, 1017 (Miss.1999); Lewis v. State, 580 So.2d 1279, 1288 (Miss. *282 1991); Gandy v. State, 373 So.2d 1042, 1045 (Miss.1979).
¶ 12. While Wilson continuously denied any involvement in the burglary, he mysteriously seemed to have a thorough memory as to the details of the burglary, as well as McDaniel's involvement and reaction to the crimes committed. The fact that Wilson made numerous contradictory statements to the police and the press also infers his consciousness of guilt. Further, the call from the dying child at 12:55 established the exact time the crime had been committed. The fact that Wilson and McDaniel were seen at the scene of the crime at 12:55 by a witness places Wilson at the scene of the crime as it had immediately occurred. Wilson was also seen holding an item at that time. The only item taken from the Smith residence was the gun used in the murder. The witness observed Wilson run away from her between two houses toward his backyard. The gun was later found in this very area. We hold that the verdict was not against the overwhelming weight of the evidence.

II. DID THE PROSECUTION COMMIT REVERSIBLE ERROR BY COMMENTING ON WILSON'S RIGHT TO NOT TESTIFY?
¶ 13. The trial court must declare a mistrial when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case. URCCC § 5.15. The granting of a motion for a mistrial is within the sound discretion of the trial judge. Bass v. State, 597 So.2d 182, 191 (Miss.1992). The trial judge "is in the best position for determining the prejudicial effect" of an objectionable remark by either the prosecutor or a witness. Perkins v. State, 600 So.2d 938, 940 (Miss.1992). Where "serious and irreparable damage" has not resulted, the judge should "admonish the jury then and there to disregard the impropriety." Hoops v. State, 681 So.2d 521, 528 (Miss.1996); Roundtree v. State, 568 So.2d 1173, 1178 (Miss.1990). The jury is presumed to have followed the admonition of the trial judge to disregard the remark. Dennis v. State, 555 So.2d 679, 682-83 (Miss.1989). See also Lester v. State, 767 So.2d 219, 222-23 (Miss.Ct.App.2000). "It is well settled that when the trial judge sustains an objection to testimony and he directs the jury to disregard it, prejudicial error does not result." Estes v. State, 533 So.2d 437, 439 (Miss.1988). See also Perkins, 600 So.2d at 940.
¶ 14. In the course of the closing argument made by the Wilson, he made the following statement:
I told you that the burden of proof is on the government, and Jessie Wilson doesn't have to prove anything. Jessie Wilson does not have to take the witness stand. Now, you may not like that, but that's what the law is and that's what the Court instructed you. You can't use that against him. He doesn't have to prove he's innocent. The government has to prove that he's guilty.
This argument provoked the State to likewise answer in their closing argument as follows:
I feel that the State is disadvantaged because we have the burden of proof in a criminal case. But my feelings is just too bad, because that's what the law is! We were required to present the evidence! I think it would be better if the defendant were required to come up here and put on all the evidence about why he didn't do what he's charged with, but we have to go forward.
At this point the defense asked permission to approach the bench. Wilson noted that "the law is clear" that the State cannot comment about the defendant's right to not testify. The judge agreed and told the prosecutor that he was "treading on real *283 thin ice there" and gave a curative instruction that the jury disregard the last comment made by the prosecutor.
¶ 15. First of all, this assignment of error is procedurally barred due to the fact that (1) a proper objection was not made, Blue v. State, 674 So.2d 1184, 1213-14 (Miss.1996), (2) the error was not raised at trial, Thornhill v. State, 561 So.2d 1025, 1029 (Miss.1989), and (3) Wilson did not request a mistrial based on these grounds, Kelly v. State, 493 So.2d 356, 360 (Miss. 1986).
¶ 16. Further, in discussing his right to not testify during the closing argument, Wilson opened the door for the State to discuss the same subject matter. Fleming v. State, 604 So.2d 280, 289 (Miss. 1992).
¶ 17. Finally, even if this assertion of error was not procedurally barred and Wilson had not opened the door for the State to make such statements, the assertion would still fail due to the fact that the State's comments did not require reversal. The test for determining whether an improper argument by a prosecutor to a jury requires reversal is "whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created." Davis v. State, 660 So.2d 1228, 1248 (Miss.1995). "Traditionally, attorneys are given wide latitude in closing arguments." Davis, 660 So.2d at 1248 (citing Ahmad v. State, 603 So.2d 843, 847 (Miss.1992)). See also Neal v. State, 451 So.2d 743 (Miss.1984). "Any allegedly improper prosecutorial remark must be evaluated taking into consideration the circumstances of the case when determining the comment's propriety." Forbes v. State, 771 So.2d 942, 950 (Miss. Ct.App.2000). The Forbes court continued to hold that "as in almost all such cases, the argument was not by itself so egregious as to prevent the jurors from reaching an appropriate verdict. Few have been the circumstances in which this argument has constituted reversible error." Id. at 951. We find the district attorney's comments in the case at hand do not require reversal.

III. DID THE TRIAL COURT ERR IN ADMITTING INFLAMMATORY AND PREJUDICIAL PHOTOGRAPHS INTO EVIDENCE?
¶ 18. It is a firmly established rule in this state that the admissibility of photographs rests within the sound discretion of the trial judge. Westbrook v. State, 658 So.2d 847, 849 (Miss.1995) (citing Griffin v. State, 557 So.2d 542 (Miss.1990)). See also Walters v. State, 720 So.2d 856, 861 (Miss.1998); Mackbee v. State, 575 So.2d 16, 31 (Miss.1990). "The decision of the trial judge will not be disturbed absent a showing of an abuse of discretion." Westbrook, 658 So.2d at 849 (citing Herring v. State, 374 So.2d 784, 789 (Miss. 1979)). See also Knight v. State, 751 So.2d 1144, 1150 (Miss.Ct.App.1999); Cohen v. State, 732 So.2d 867, 872 (Miss.1998). The discretion of the trial judge is that of almost "unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value." Westbrook, 658 So.2d at 849 (quoting Hart v. State, 637 So.2d 1329, 1335 (Miss.1994)). See also Brooks v. State, 748 So.2d 736, 743 (Miss.1999). "Photographs that are gruesome or inflammatory or that lack an evidentiary purpose are inadmissible as evidence." McNeal v. State, 551 So.2d 151, 159 (Miss.1989). See also Cabello v. State, 471 So.2d 332, 341 (Miss.1985); Billiot v. State, 454 So.2d 445, 449-60 (Miss.1984).
¶ 19. The photographs complained of here illustrate the surrounding crime scene as well as the gun used in the *284 crime. We hold that the trial court was well within its discretion in allowing those photographs.

IV. WAS WILSON DENIED A FAIR TRIAL IN BELZONI, HUMPHREYS COUNTY, MISSISSIPPI DUE TO PRETRIAL PUBLICITY?
¶ 20. Wilson failed to make a motion for a change of venue. Therefore, this error is procedurally barred.
¶ 21. Furthermore, Wilson's argument is support of this issue is without cited authority. "We remain steadfast to rule that failure to cite any authority may be treated as a procedural bar, and we are under no obligation to consider the assignment." McClain, 625 So.2d at 780. See also Baine v. State, 604 So.2d 249, 255 (Miss.1992); Estes v. State, 533 So.2d 437, 440 (Miss.1988); Brown v. State, 534 So.2d 1019, 1023 (Miss.1988); Shive v. State, 507 So.2d 898, 900 (Miss.1987). "There is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to this Court." Pate v. State, 419 So.2d 1324, 1325-6 (Miss.1982). Supporting the argument of his issues with reasons and authorities is part of an appellant's burden on appeal. Pate, 419 So.2d at 1326.

V. DID THE TRIAL COURT ERR IN ALLOWING THE TESTIMONY OF RIVA BROWN?
¶ 22. It has been established that: "`Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. "All relevant evidence is admissible, except as otherwise provided ..." M.R.E. 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M.R.E. 403.
¶ 23. During an interview with Brown, Wilson gave a false name and offered that he saw McDaniel at the approximate time of the murders. The fact that Wilson gave a false name and offered that he saw McDaniel at the time of the murders not only establishes the relevance of Brown's testimony, it shows consciousness of guilt. McClendon v. State, 387 So.2d 112, 115 (Miss.1980); Sartain v. State, 311 So.2d 343 (Miss.1975).
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF HUMPHREYS COUNTY OF CONVICTION OF COUNT I CONSPIRACY TO COMMIT BURGLARY AND COUNT II BURGLARY OF A DWELLING AND SENTENCE IN COUNT I OF FIVE (5) YEARS AND COUNT II FIFTEEN (15) YEARS TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, LEE, IRVING, MYERS and CHANDLER, JJ., concur.