JAMES, J.,
for the Court:
¶ 1. Frederick Devon Pritchett appeals his convictions of armed robbery, kidnapping, and auto theft. He argues the verdicts were against the weight of the evidence because of conflicting trial testimony and a lack of physical evidence connecting him to the crimes. Finding no error, we affirm.
FACTS
¶ 2. On October 21, 2011, Theresa Ivy was leaving the Cash King in Meridian, Mississippi, when a man approached her in the parking lot. The man walked up behind her as she neared her car, shoved her, and said, “B* * * *, get in the car; get in; get in.” The man was holding a gun, so she complied. She crawled over the driver’s seat and into the passenger’s seat. The man got behind the wheel, and another man got into the back seat. The driver drove off with Ivy still in the car. The men told Ivy they were going to kill her and demanded money. Ivy only had *859 $4, which the men took. They also took Ivy’s purse, her house keys, the keys to the Cash King, her insulin, all her identification, and her cell phone. The driver drove back to the Cash King and demanded that Ivy open the safe. The men took approximately $2,500 to $2,600 in cash, as well as the store’s deposits and checks.
¶ 3. Ivy was then escorted back to her car, and the men continued driving around town. Finally, the driver stopped the car. He started to get out, but the man in the back seat stopped him, saying: “[L]et me take care of this.” The man got Ivy out of the car and told her that if she wanted to live, she would do as he said. He told her that he was going to hit her, and when he did, she must fall to the ground and remain silent. Ivy complied, and the men drove away in her car. She lay on the ground until the car was gone. She was unable to walk to find help, since the men had taken her cane. So she crawled through the woods toward a neon light. When law enforcement found her, she was covered in scratches, and her eye was bruised.
¶ 4. Ivy identified Pritchett in a photographic lineup as the man who drove her car and robbed her. Pritchett was arrested and tried. He was found guilty by a Lauderdale County jury of armed robbery, kidnapping, and auto theft. He was sentenced to thirty years for armed robbery, fifteen years for kidnapping, and ten years for auto theft. The sentences were ordered to run consecutively, all in the custody of the Mississippi Department of Corrections. Pritchett’s motion for a new trial was denied. He now appeals.
ANALYSIS
¶ 5. When reviewing the denial of a motion for a new trial, this Court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). The evidence is “weighed in the light most favorable to the verdict.” Id. “A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, ‘unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict.’ ” Id. (quoting McQueen v. State, 423 So.2d 800, 803 (Miss.1982)). Rather, it means that “the court simply disagrees with the jury’s resolution of the conflicting testimony.” Id.
I. Conflicting Testimony
¶ 6. Pritchett argues a new trial is warranted because Ivy’s trial testimony conflicted with her statement to police officers after the incident.
¶ 7. At trial, Ivy testified that she was able to see Pritchett’s face during the incident, even though it was partially covered by a hood. She testified that Pritch-ett pushed her into her car at gunpoint, drove her around town, stole money from the Cash King, stole her purse, and eventually stole her car. Pritchett argues Ivy’s identification of him conflicts with a statement she made to Detective Mark Chand-lee. Reading from Ivy’s statement made after the incident, Detective Chandlee testified that he asked Ivy, “Would you recognize the suspects if you saw them again?” She answered, “I never got a good look at their face [sic], so I doubt it.” Pritchett argues this is sufficient to overturn the guilty verdict.
¶ 8. Taken in context, however, Ivy’s statement is more clear. First, Detective Chandlee testified that just prior to asking Ivy if she would recognize the suspects again, he had been describing the individual in the back seat. Further, on cross- *860 examination, Detective Chandlee was questioned and testified as follows:
Q. Did [Ivy] ever say she could recognize the driver but not the guy in the back seat?
A, She was very clear that she could not recognize the guy in the back seat because he refused to let her look at him, but she gave a-somewhat of a description of the driver to me that night.
[[Image here]]
Q. All right. She did though give you a pretty thorough description of what the driver looked like other than his face; is that correct?
A. Yes, sir. She gave a description of him. That was the first question I asked her after her narrative.
Q. And that was the young, slender black-built black male, light blue hoodie or sky blue and kept his hood pulled down, wiry, kind of slender?
A. Yes, sir.
Q. And have you seen the Defendant?
A. Yes, sir.
Q. Does that description fit him?
A. Yes, sir.
¶ 9. Detective James Arrington was assigned to investigate the case. His testimony was consistent with Detective Chandlee’s testimony regarding Ivy’s identification of Pritchett:
Q. Now, tell us whether or not she indicated to you that she could identify one of the suspects.
A. She said she could identify one of the suspects.
Q. And with respect to the front seat, back seat; that is, driver or back seat, which one did she say she could identify?
A. The driver.
Q. And tell us whether or not she identified anyone from [the photographic] lineup.
A. She identified Mr. Pritchett, Frederick Pritchett.
Q. How long did it take her to pick him out?
A. Within two seconds. It was immediate.
¶ 10. At trial, Pritchett testified and denied any involvement in the crime, despite a prior written confession of guilt. When interviewed by Detective Arrington on October 27, 2011, Pritchett stated that on the day of the incident, Santrez Grady picked him up in a pickup truck. A white woman was in the passenger seat. Pritch-ett stated that he “just helped [Grady] out,” but did not rob Ivy. Pritchett signed the statement and initialed each answer. However, at trial, Pritchett denied knowledge of the crime and denied giving a statement to law enforcement. When shown the statement bearing his signature and initials, Pritchett stated that the document must have been forged by the law-enforcement officers.
¶ 11. Weighing the evidence in the light most favorable to the verdict, we cannot say that an unconscionable injustice resulted from the jury’s guilty verdict. Ivy’s testimony was consistent that she saw Pritchett’s face during the incident, and she immediately recognized him in ■ the photographic lineup. Even before she was shown the photographic lineup, she accurately described Pritchett’s appearance to Detective Chandlee. Also, when Pritchett was interviewed on October 27, 2011, six days after the incident, he was wearing a blue hoodie matching the description given by Ivy of Pritchett’s clothing. Ivy was shown the hoodie at trial and identified it as the one that Pritchett was wearing on the day of the incident. In light of these facts, we cannot say that the evidence *861 preponderates heavily against the jury’s verdict. The trial court did not abuse its discretion in denying a new trial. This issue is without merit.
II. Lack of Physical Evidence
¶ 12. Pritchett next argues that the jury’s verdict was against the weight of the evidence because no physical evidence connected him to the crime. In support of his argument, Pritchett references the lack of fingerprint evidence. Detective Chand-lee testified that fingerprints were taken from the crime scene, but they were “par-tíais that weren’t identifiable through the State database.”
¶ 18. However, “the absence of physical evidence does not negate a conviction where there is testimonial evidence.” Graham v. State, 812 So.2d 1150, 1153 (¶ 9) (Miss.Ct.App.2002). Here, the overwhelming weight of the evidence supported the jury’s verdict, even without physical evidence. Accordingly, this issue is without merit.
¶ 14. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, ARMED ROBBERY, AND SENTENCE OF THIRTY YEARS; COUNT II, KIDNAPPING, AND SENTENCE OF FIFTEEN YEARS; AND COUNT III, AUTO THEFT, AND SENTENCE OF TEN YEARS, WITH ALL SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A FINE OF $1,000 AND RESTITUTION OF $3,456, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ„ CONCUR. IRVING, P.J., CONCURS IN RESULT ONLY.