# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-755-COA

**CHRISTOPHER ANTONIO GROVES A/K/A**          **APPELLANT**
**CHRISTOPHER GROVES**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/28/2021 |
| TRIAL JUDGE: | HON. CALEB ELIAS MAY |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: W. DANIEL HINCHCLIFF |
| | CHRISTOPHER GROVES (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALEXANDRA DEANNA LEBRON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/09/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. Christopher Groves was convicted in the Leake County Circuit Court for the kidnapping and armed robbery of Terri Neal. On appeal, Groves argues that the circuit court erred by using and allowing the use of the word "victim," that he was unfairly prejudiced by prosecutorial misconduct during closing arguments, and that the verdict was against the sufficiency and weight of the evidence. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On December 12, 2019, Terri Neal drove to her place of employment at the Leake County School District's office to pick up a Christmas present for her daughter. Her car was

the only vehicle parked in the parking lot. She entered the building and retrieved the gift. Upon exiting the building, she had an encounter with the Defendant, Christopher Groves. At this point, Neal's and Groves' versions of events differ.

¶3.     According to Neal, she was approached by a man brandishing a gun. He told her to get into her "truck," threatening to shoot her if she did not comply. Fearing for her life, Neal entered her vehicle on the passenger's side while the assailant entered on the driver's side. Neal placed her gift in the back seat of the car and secretly dialed 911 on her cell phone. The man asked for her phone, which she then intentionally dropped on the floor. As he reached down to retrieve the phone, Neal attempted to take control of the man's gun.

¶4.     She grabbed his fingers, intending to break them. When she began to lose her grip, she jumped into the driver's seat and began to knee and strike the man with her forearm. The man's attitude changed, and he asked Neal to let him go. He told her that he was homeless. The man grabbed her breast and genitals in an attempt to get Neal to release him. A struggle ensued.

¶5.     A short time later, the man threw Neal off him and exited the vehicle. The man put the gun in his back waistband and asked Neal for money. Exhausted, she gave the man five dollars from her purse, believing it was the only way to end the encounter. The man left, and Neal drove to a safe location, dialed 911 again, and went to the police station to give her statement. Afterward, Neal went to the hospital where doctors took DNA evidence from the scratches on her neck. She also provided the hospital with earrings and a necklace that did not belong to her but were left in her car after the scuffle. Later, Investigator Steven Bell

showed Neal a photo line-up, and Neal identified Groves as the attacker.

¶6.    Groves was arrested and placed into custody. He had two interviews with the police. At the first interview, Investigator Bell showed a photo of a man in a striped shirt and toboggan hat. It was taken from a surveillance video overlooking the parking lot where the incident occurred. Groves admitted that it was him in the photo and that he was in the parking lot on the day of the crime, but he denied participating in any crime. He gave the police permission to search his home, where officers found the toboggan hat that Groves was wearing in the surveillance video. They did not find a gun. In his second interview, Groves stated he wanted to "own up for his crime." He confessed to forcing a "white lady" into her car and threatening to hurt her if she did not give him money. He denied having a gun. In July 2020, Groves was indicted for kidnapping and armed robbery.

¶7.    At trial, Groves provided a third account of what happened. Groves took the stand in his own defense and testified that he was walking home from his friend's house when he saw Neal in the parking lot. He supposedly had worked for Neal's mother by replacing tile floors in her properties. Groves testified that Neal approached him and asked for methamphetamine. They both entered the car and began to have sex in an implied sex-for-methamphetamine tradeoff. Groves testified that he did not give Neal any drugs, and she became upset. He asked Neal for money, and she gave him five dollars. After taking the money, Groves left. Groves testified that later that evening, a fellow gang member approached him and took credit for the kidnapping and armed robbery of Neal. Groves did not give the name of the gang member during his testimony because he "feared for [his] life

3

. . . ." He testified that Neal only identified him as the perpetrator because she was upset she never received any methamphetamine.

¶8. On rebuttal, Neal denied that Groves ever worked for her mother and that her mother's flooring was the original from the 1970s. She denied having sex with Groves and testified that she had never smoked methamphetamine. She testified that she had never seen Groves prior to their encounter. After deliberation, the jury returned with a guilty verdict on both counts, and Groves was sentenced to consecutively serve thirty years in custody for each crime.

¶9. Groves appealed, claiming the circuit court erred by allowing the use of the word "victim" to refer to Neal throughout the trial. After both Groves and the State filed their briefs, Groves filed a supplemental pro se brief claiming that his conviction should be overturned due to prosecutorial misconduct during closing argument and that the conviction was against the sufficiency and weight of the evidence. This Court ordered the State to brief the new issues raised in Grove's supplemental brief.

## DISCUSSION

### I. Use of the Word "Victim"

¶10. An abuse-of-discretion standard applies when reviewing a circuit court's admission or exclusion of evidence. *Jumper v. Olive Branch Fam. Med. Clinic*, 318 So. 3d 1143, 1149 (¶22) (Miss. Ct. App. 2020). This Court will not reverse an error involving an admission or exclusion of evidence unless a substantial right is adversely affected. *Id.*

¶11. Groves claims that the circuit court erred by using and allowing the State to use the

word "victim" during voir dire and at trial. The court initially referred to Neal as the victim during voir dire, stating, "There is a victim in this case. The victim's name is Terri Shannon Neal." Neal was referred to as "the victim" several more times before Groves objected to its usage in a motion in limine. The circuit court denied the motion, stating that the jury had already been admonished on the burden of proof, presumption of innocence, and the importance of gleaning facts from the witness stand. During trial, the State asked Investigator Bell, "Who was the victim in that case?" Groves objected, and the court overruled the objection based on its earlier ruling.

¶12. We find that the circuit court did not abuse its discretion by referring to or allowing Neal to be referred to as "victim." Groves cites no case where an appellate court overturned a trial court for allowing the word "victim" to be used during trial. Groves cites *Taconi v. State*, 912 So. 2d 154, 156-57 (¶¶11-16) (Miss. Ct. App. 2005), for the premise that using "victim" rather than "alleged victim" can arguably interfere with a defendant's presumption of innocence. However, this Court in *Taconi* found the defendant's arguments were without merit because the trial judge admonished the jury on the issue. *Id.* at 157 (¶¶16-18).

¶13. Furthermore, the Mississippi Supreme Court in *Gilbert v. State*, 48 So. 3d 516, 523 (¶¶28-29) (Miss. 2010), adopted the holding in *Taconi* and affirmed the trial court's ruling after it denied a motion in limine to bar the word "victim" and allowed its use during the trial. Groves argues that *Gilbert* is distinguishable from the present case because the circuit court itself used the word victim rather than solely the State. In support of this contention, Groves cites several cases that emphasize the influence judges have over a jury and the importance

5

for judges to guard their language appropriately. *See Beyersdoffer v. State*, 520 So. 2d 1364, 1366 (Miss. 1988); *Roberson v. State*, 185 So. 2d 667, 670 (Miss. 1966); *Fulgham v. State*, 386 So. 2d 1099, 1101 (Miss. 1980); *Davis v. State*, 811 So. 2d 346, 353 (¶14) (Miss. Ct. App. 2001).[1]

¶14.    While we agree that judges sit in an influential position over the jury, it is also true that trial judges are in the best position to determine what is prejudicial to a jury and how to address those concerns.

> The trial judge "is in the best position for determining the prejudicial effect" of an objectionable remark by either the prosecutor or a witness. Where "serious and irreparable damage" has not resulted, the judge should "admonish the jury then and there to disregard the impropriety." The jury is presumed to have followed the admonition of the trial judge to disregard the remark. "It is well settled that when the trial judge sustains an objection to testimony and he directs the jury to disregard it, prejudicial error does not result."

*Taconi*, 912 So. 2d at 157 (¶16) (quoting *Wilson v. State*, 797 So. 2d 277, 282 (¶13) (Miss. Ct. App. 2001)). In the present case, the circuit court denied Groves' motion in limine to bar the word "victim" in part because the court had admonished the jury several times on the presumption of innocence, burden of proof, and importance to weigh the evidence from the witness stand. It is also noteworthy that Neal was an undisputed victim in this case. Groves' own testimony confirmed that Neal had been kidnapped and robbed; he only suggested someone other than him committed the crimes. Accordingly, we find that the circuit court

---

[1] Groves also argues *Gilbert* is distinguishable because the word "victim" was less isolated and more emphasized in the present case. While "victim" was used more prevalently in this case, and it was clearly used to describe Neal, we find that this difference does not rise to a level to distinguish the holding of *Gilbert* and *Taconi*. Like in *Gilbert*, this issue was discussed in a motion in limine, and it was denied. *Gilbert*, 48 So. 3d at 523 (¶26).

6

did not abuse its discretion by using or allowing the word "victim" to be used during voir dire and trial.

## II. Prosecutorial Misconduct

¶15. During closing argument, the prosecutor for the State referenced Groves' testimony and said, "That's absurd. It's not believable, and you get to judge whether or not that's credible or she's credible. And I will submit to you that she's credible." Groves claims in his supplemental brief that this statement by the prosecution unfairly prejudiced the jury and was reversible error.

¶16. Attorneys are given wide latitude in making their closing arguments. *Evans v. State*, 226 So. 3d 1, 31 (¶79) (Miss. 2017). Yet, "[a] prosecutor is forbidden from interjecting his personal beliefs regarding the veracity of witnesses during closing argument." *Moffett v. State*, 156 So. 3d 835, 859 (¶70) (Miss. 2014) (quoting *Foster v. State*, 639 So. 2d 1263, 1288 (Miss. 1994)). However, the failure to contemporaneously object waives a claim of prosecutorial misconduct on review. *Evans*, 226 So. 3d at 31 (¶78). This Court can still review a claim of prosecutorial misconduct "if the prosecutor's statement was so inflammatory that the trial judge should have objected on his own motion." *Id.*

¶17. Groves' claim is both procedurally barred and without merit. Groves did not object to the alleged misconduct during the State's closing argument. Further, the alleged misconduct was not so inflammatory as to require the circuit court's sua sponte objection. The prosecution vouched for Neal as a witness only once, and it was tempered with statements that the jury had to decide the credibility of the witnesses. Compare that to

7

*Rasheed v. State*, 237 So. 3d 822, 831 (¶28) (Miss. Ct. App. 2017), where this Court held that several instances of a prosecutor claiming witnesses told the truth or were honest were not inflammatory enough to require the circuit court's sua sponte objection.

¶18.    Regardless of the procedural bar, Groves' claim fails on the merits. Groves certainly challenged Neal's testimony at trial, and the State was entitled to argue in favor of Neal's credibility. *See Brown v. State*, 798 So. 2d 481, 492 (¶10) (Miss. 2001). Furthermore, even if the State committed error by vouching for Neal's testimony, the error is not reversible. "The test for determining whether an improper argument by a prosecutor to a jury requires reversal is 'whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created.'" *Wilson*, 797 So. 2d at 283 (¶17) (quoting *Davis v. State*, 660 So. 2d 1228, 1246 (Miss. 1995)). The evidence was overwhelming against Groves, and it is unlikely the jury would have decided another way even without the alleged prosecutorial misconduct. Therefore, we find that this issue is procedurally barred and without merit.

### III.    Sufficiency and Weight of the Evidence

¶19.    In his supplemental brief, Groves essentially challenges the sufficiency and weight of the evidence. He claims "[t]he State [a]llowed [a]n [e]ssential [e]lement of the [c]ase [t]o [b]e [p]resented as [s]ettled" and that no gun was produced to support his conviction.

¶20.    With a challenge to the sufficiency of the evidence, the appellate court must view the evidence in the light most favorable to the prosecution and ask if any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt. *Lattimer v. State*, 952 So. 2d 206, 224 (¶54) (Miss. Ct. App. 2006). We review this issue de novo. *Barnett v. State*, 315 So. 3d 458, 462 (¶21) (Miss. 2021).

¶21. Groves was convicted of kidnapping and armed robbery. Under Mississippi law, kidnapping is defined as

> [a]ny person who, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or imprisoned against his or her will, or without lawful authority shall forcibly seize, inveigle or kidnap any vulnerable person as defined in Section 43-47-5 or any child under the age of sixteen (16) years against the will of the parents or guardian or person having the lawful custody of the child . . . .

Miss. Code Ann. § 97-3-53 (Rev. 2020). Mississippi law defines armed robbery as

> [e]very person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery . . . .

Miss. Code Ann. § 97-3-79 (Rev. 2020).

¶22. Neal testified that Groves forced her into her car at gunpoint and did not allow her to leave. She testified that he threatened her with a gun and demanded money. Both Neal and Groves testified that Neal gave him five dollars. Neal stated she gave him the money because she feared for her life. She later identified Groves in a lineup. Groves testified he was in the parking lot around the time of the crime, and he was seen on video wearing a toboggan that was later recovered from his home. Groves confessed to the crime, stating, "I forced her in her car. I threatened to hurt her. She was scared." It is clear from the evidence at trial, viewed most favorably for the prosecution, that a rational jury could convict Groves

9

of these two crimes.

¶23. When reviewing a challenge to the weight of the evidence, an appellate court will only disturb a verdict if the verdict is so contrary to the overwhelming weight of the evidence that allowing the verdict to stand would constitute an unconscionable injustice. *Hunt v. State*, 81 So. 3d 1141, 1146 (¶19) (Miss. Ct. App. 2011). This type of challenge carries a lower standard of review than a challenge to the sufficiency of the evidence. *Edwards v. State*, 349 So. 3d 1174, 1180 (¶21) (Miss. Ct. App. 2022). The evidence is weighed "in the light most favorable to the verdict," and the "jury is the sole judge of the weight and worth of evidence and witness credibility." *Id.* (quoting *Henderson v. State*, 323 So. 3d 1020, 1028 (¶27) (Miss 2021)). The trial court's ruling on the issue is reviewed for abuse of discretion. *Id.*

¶24. As with the sufficiency challenge, it is clear from the evidence that the jury's verdict is rational and does not constitute an unconscionable injustice. The jury heard testimony from Neal, Investigator Bell, and Groves. Groves' testimony was incriminating alone, as he admitted to being on the scene and interacting with Neal. The jury also saw Groves' videotaped confession. The only evidence in support of Groves was his own testimony. Contrary to Groves' claim in his supplemental brief, the State did not need to produce a gun to prove that he was guilty of kidnapping and armed robbery. *See Pritchett v. State*, 134 So. 3d 857, 861 (¶13) (Miss. Ct. App. 2014). The same applies to DNA evidence. *Id*. The evidence supported the jury's verdict; therefore, Groves' claim that the verdict was against the sufficiency and weight of the evidence is without merit.

**CONCLUSION**

10

¶25. Groves claimed that the circuit court erred by using and allowing the use of the word "victim" during voir dire and trial. He also argued that he was unfairly prejudiced by prosecutorial misconduct during closing arguments and that the verdict was against the weight and sufficiency of the evidence. After review, we find that the circuit court did not abuse its discretion by using the word "victim," that Groves' claim of prosecutorial misconduct is procedurally barred and without merit, that sufficient evidence existed to support the convictions, and that the verdict was not against the overwhelming weight of the evidence.

¶26. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**